STATE of Tennessee, Appellee,

v.

George B. GILBERT, Appellant.

Court of Criminal Appeals of Tennessee, at Nashville.

Feb. 16, 1988.

Permission to Appeal Denied by Supreme Court May 2, 1988.

Charles Ray, Nashville, for appellant.

W.J. Michael Cody, Atty. Gen. & Reporter, Miriam Nabors Banks, Asst. Atty. Gen., Lawrence R. Whitley, Dist. Atty. Gen., Dee D. Gay, Asst. Dist. Atty. Gen., Gallatin, for appellee.

## OPINION

JONES, Judge.

The defendant, George B. Gilbert, was convicted of driving under the influence, second offense, by a jury of his peers. The trial court sentenced the defendant to pay a fine of $1,500, the amount recommended by the jury, and confinement in the Sumner County Jail for eleven months and twenty-nine days. The trial court suspended all but ninety (90) days of the sentence.

In this Court the defendant has presented a multitude of issues for review.

The defendant contends the trial court committed error in denying his motions to suppress his initial seizure, the results of the field sobriety test, and dismiss the indictment, permitting the results of the blood-alcohol test to be introduced as evidence, permitting the toxicology report to be introduced as evidence, denying his motion for judgment of acquittal, and permitting the introduction of incompetent evidence during the first stage of the proceeding. The defendant also contends the assistant district attorney general was guilty of prosecutorial misconduct when he induced a police officer to comment upon the defendant's silence at the time of his arrest and inserted facts not in evidence during summation.

## MOTION TO SUPPRESS INITIAL SEIZURE AND FRUITS OF SEIZURE

The defendant contends the trial court committed prejudicial error in denying his pretrial motion to suppress his initial seizure as well as the fruits of the seizure. We disagree.

A private citizen, who was en route home from his place of employment, noticed a small pickup truck being driven erratically. The truck was weaving between the shoulder of the roadway and the left-hand lane. When the truck stopped in obedience to stop lights, the driver stopped between fifty and sixty feet short of the intersection.

When the citizen reached Hendersonville, he noticed Officer Brake in the parking lot of a doughnut shop. The citizen stopped, told Officer Brake what he had observed, and pointed to the truck being driven by the defendant as it proceeded southwardly towards Nashville. The officer pursued the defendant.

While following the defendant, the officer observed him weaving between the left and right-hand lanes on several occasions. He decided to stop the vehicle, and turned on the emergency lights in Sumner County. The defendant stopped his vehicle just inside Davidson County. When the officer approached the pickup truck and asked the defendant for his driver's license, he

smelled an alcoholic beverage upon his breath. The defendant's eyes were "red and bloodshot looking." The officer then asked the defendant to perform three field sobriety tests to see if the defendant's driving of the vehicle was impaired by the alcohol he had consumed. Apparently the defendant voluntarily attempted to perform these tests. He performed them poorly, and the officer placed him under arrest. Subsequently, the defendant agreed to have blood drawn for the purpose of a blood-alcohol test. The blood specimen was forwarded to the Tennessee Bureau of Investigation—Crime Laboratory for an analysis.

 Contrary to the assertion of the defendant, Officer Brake was not required to have probable cause to arrest the defendant before stopping him. *State v. Denson*, 710 S.W.2d 524, 525 (Tenn.Crim.App.1985). See *State v. McLennan*, 503 S.W.2d 909, 910–911 (Tenn.1973); *State v. Yarbro*, 618 S.W.2d 521, 523 (Tenn.Crim.App.1981); *State v. Foote*, 631 S.W.2d 470, 472 (Tenn.Crim.App.1982). As stated by this Court in *State v. Foote:* "It is now well settled that probable cause is not required to justify an investigative stop; all that is required is that the officer have reasonable suspicion supported by specific and articulable facts." 631 S.W.2d at 472. We are of the opinion Officer Brake had reasonable suspicion, which was supported by sufficiently specific and articulable facts, to stop the defendant. The officer had the benefit of the private citizen's observations as well as his own observations of the defendant's erratic driving. What was observed by both is characteristic of a person operating a motor vehicle while under the influence of an intoxicant. See *State v. Denson*, supra.

 When the officer discovered that the defendant had been drinking, and exhibited symptoms of being under the influence of an intoxicant, it was permissible for the officer to detain the defendant for the purpose of having him perform the field sobriety test. As heretofore noted, the defendant performed, or attempted to perform, these tests voluntarily. After the defendant had performed the tests poorly, and the officer's suspicions were confirmed, he had probable cause to arrest the defendant.

 Since Officer Brake was in pursuit of the defendant's vehicle within his jurisdiction, he was authorized to stop the defendant after he had crossed into Davidson County. See *Francis v. State*, 498 S.W.2d 107, 114 (Tenn.Crim.App.1973). Once the officer had stopped the defendant he had every right to continue his investigation at the situs of the stop.

This issue is without merit.

## MOTION TO SUPPRESS FIELD SOBRIETY TESTS

The defendant contends the trial court committed error of prejudicial dimensions in denying his motion to suppress the results of the field sobriety test. The defendant predicated his motion on several grounds.

First, the defendant contends the officer made an illegal stop of the defendant's motor vehicle and, therefore, the results of the field sobriety tests given subsequent to the illegal stop were fruits of the poison tree. This ground is without merit. As we have hereinabove ruled, the initial stop of the defendant was lawful, and the field sobriety test did not constitute fruits of the poison tree.

 The defendant next argues that there was no requisite probable cause to give rise to the field sobriety tests. We disagree. We are of the opinion there were numerous grounds to justify the field sobriety tests. As we have noted, the officer observed the defendant's erratic driving, the defendant had an odor of an intoxicating beverage on his breath, and his eyes were red and bloodshot. Therefore, this ground is without merit.

 The defendant argues the requirement that the defendant participate in the field sobriety tests forced the defendant to give evidence against himself in violation of Article I, § 9 of the Tennessee Constitution and the Fifth Amendment to the Unit-

ed States Constitution. We disagree. First, there is no evidence in the record that the defendant was "required" or "coerced" to participate in the tests. To the contrary, it may be reasonably inferred from the record that the defendant consented to take the field sobriety tests given him. Moreover, the defendant was not required to give evidence against himself when asked to perform the field sobriety tests. *Trail v. State,* 526 S.W.2d 127, 129 (Tenn.Crim.App.1974). *State v. Snapp,* 696 S.W.2d 370 (Tenn.Crim.App.1985). This ground is without merit.

■ The defendant further argues that there is no scientific basis for the field sobriety tests or their results, and, furthermore, the results of such tests confuse the trier of fact. We are of the opinion field sobriety tests are not "scientific tests", and the admissibility of the results is not to be governed by rules pertaining to the admission of scientific evidence.

This issue is without merit.

### VAGUENESS OF INDICTMENT

The defendant contends the trial court committed error of prejudicial dimensions in denying his motion to dismiss the indictment returned against him by the Sumner County Grand Jury. The defendant contends the indictment is vague and failed to give the defendant adequate notice. The defendant predicates his motion on the grounds the statutory presumption of .10 percent blood alcohol (a) is constitutionally void because it is so vague and arbitrary to make enforcement on a rational basis impossible, (b) it triggers a penal statute without giving adequate notice to a person with ordinary intelligence, (c) it triggers a penal statute without the ordinary person having any reasonable way of determining whether he has reached the .10 percent level, thereby denying fair notice, and (d) it is an arbitrary and capricious standard that gives little indication of an individual basis as to whether one is impaired to the point of being intoxicated.

■ We are of the opinion the defendant's argument is predicated upon a false premise. The inference which may be drawn when the blood alcohol level of the accused is 0.10% is not an element of the offense of driving while under the influence. The elements of the offense are: (a) driving or being in physical control of a motor vehicle, (b) upon a public thoroughfare, and (c) while under the influence of an intoxicant or narcotic drug. T.C.A. § 55–10–401; *Ray v. State,* 563 S.W.2d 218, 219 (Tenn.Crim.App.1977). An accused may be convicted of the offense of driving while under the influence without a blood, urine or chemical breath test indicating the accused's blood alcohol level was 0.10% or greater. See *Shiflet v. State,* 216 Tenn. 365, 392 S.W.2d 676 (1965); *State v. Hall,* 675 S.W.2d 208 (Tenn.Crim.App.1984); *State v. Wright,* 691 S.W.2d 564 (Tenn. Crim.App.1984); *State v. Morgan,* 692 S.W. 2d 428 (Tenn.Crim.App.1985). It has long been established that the offense of driving while under the influence may be established solely by circumstantial evidence. See *Hopson v. State,* 201 Tenn. 337, 299 S.W.2d 11 (1957); *Farmer v. State,* 208 Tenn. 75, 343 S.W.2d 895 (1961); *Hardin v. State,* 210 Tenn. 116, 355 S.W.2d 105 (1962), reh. den. 210 Tenn. 116, 356 S.W.2d 595 (1962).

T.C.A. §§ 55–10–407 and 408 are rules of evidence applicable to the operation of a motor vehicle while under the influence of alcohol or drugs. T.C.A. § 55–10–407 simply provides that the results of chemical tests of blood, urine and breath, which are performed to determine the amount of alcohol or presence of drugs contained in the defendant's blood, are admissible as evidence in such cases. T.C.A. § 55–10–408 provides that a rebuttable inference arises that a defendant is under the influence of an intoxicant within the meaning of the statute proscribing the offense when a defendant's blood contains 0.10% or a greater percentage of alcohol.

■ In the case *sub judice* the indictment returned against the defendant alleged in part:

... [O]n or about the 1st day of December, 1985, in the County and State aforesaid, did unlawfully drive and operate a

motor vehicle upon the public highways, roads, and streets of Sumner County and the State of Tennessee while in a drunken or partly drunken condition and while under the influence of an intoxicant or narcotic drugs....

We are of the opinion the indictment meets all of the requirements mandated by law. The description of the offense set forth in the indictment (a) contains all of the elements of the offense, (b) it sufficiently apprises the defendant of the offense he is called upon to defend, (c) it informs the trial judge of the offense to which he must apply the judgment, and (d) it will permit the defendant to plead with accuracy a former acquittal or conviction of the present offense. *Inman v. State*, 195 Tenn. 303, 304–305, 259 S.W.2d 531, 532 (1953); *Frost v. State*, 205 Tenn. 671, 677, 330 S.W.2d 303, 305 (1959).

This issue is without merit.

## ADMISSIBILITY OF RESULTS OF BLOOD–ALCOHOL TEST

The defendant vigorously contends that the trial court committed egregious error in permitting the State to introduce the results of the blood-alcohol test. His contentions are numerous. We are of the opinion all of the contentions are without merit.

The defendant first argues he was entitled to a sample or specimen of the blood drawn from the defendant on the evening in question and, subsequently, tested by the Tennessee Bureau of Investigation at its laboratory. This argument is predicated upon the right of an accused to a sample or specimen so that he can obtain an independent analysis of the blood specimen. See Tenn.R.Crim.P. 16(a)(1)(C); *State v. Gaddis*, 530 S.W.2d 64 (Tenn.1975). He further argues that he has a statutory right to a sample or specimen of the blood. See T.C.A. § 55–10–410(e).

■ When an accused is charged with the offense of driving while under the influence, and blood is drawn from the accused for the purpose of a blood-alcohol test, the accused has a right to demand and receive a sample or specimen of his blood in order to have an independent analysis made by an expert of his own selection. Tenn.R.Crim.P. 16(a)(1)(C). See *State v. Gaddis*, supra at 69; *State v. Benson*, 645 S.W.2d 423, 424 (Tenn.Crim.App.1983). Any independent analysis which is made comes at the expense of the accused; and the providing of the sample or specimen as well as the analysis are subject to any reasonable conditions which the trial court may impose. *State v. Gaddis*, supra. Of course, this right presupposes that a sample or specimen is in existence at the time of the request; and the sample or specimen is of sufficient size or quantity that it can be made available to the accused or his expert.

In the case *sub judice* the defendant filed a pretrial motion, which alleged: "Comes the Defendant, George B. Gilbert, who respectfully moves the Court to have an independent chemical analysis of the blood sample obtained in his case." His motion does not comport with Rule 47, Tenn.R.Crim.P. This rule provides in part that a motion "shall state with particularity the grounds upon which it is made and shall set forth the relief or order sought." As can be seen from a perusal of the motion, the motion is vague, ambiguous, and couched in very general terms. Quite frankly this Court cannot determine whether the defendant wanted the trial court to obtain an independent analysis of the blood or was asking the trial court to order the State to provide him a sample or specimen of the blood drawn from his body on the evening in question.

■ Assuming that the defendant asked, as he argues, for a sample or specimen of the blood, he failed to carry his burden of proof when the motion was heard by the trial court. While the record reflects that blood was drawn from the defendant's body on the evening in question, and the blood was tested by the Tennessee Bureau of Investigation at its crime laboratory, the record does not reveal that the blood was or was not in existence when the motion was filed. Counsel alluded to a previous case and what had occurred when defense counsel moved the court for the

same relief. During argument counsel stated:

> The last time that we raised this issue, Your Honor, I think you directed the State to make inquiry as to whether or not a sample existed which would be appropriate for us to turn over to our experts, and on inquiry the State was told by the Crime Lab, I believe ... that they had destroyed—no such sample existed.

At another point in his argument he stated:

> ... I'm not suggesting that General Gay or anyone did anything improper. I think it's just normal procedure of the Tennessee Crime Lab to destroy this evidence....

■ The trial court properly denied the defendant's motion. First, the State is not required to preserve samples taken for the limited purpose of determining the defendant's blood-alcohol level. See *California v. Trombetta*, 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984). It is common knowledge that human blood is perishable, and specimens of blood can only be maintained for a short period of time. Also, such evidence would not be expected to play a significant role in the accused's defense. *California v. Trombetta*, supra. Second, the defendant concedes that the Tennessee Bureau of Identification acted in good faith and apparently destroyed the blood specimen in conformity with the established procedures of the laboratory. See *California v. Trombetta*, supra; *State v. Brownell*, 696 S.W.2d 362, 363–364 (Tenn.Crim.App.1985); *State v. Dowell*, 705 S.W.2d 138, 141–142 (Tenn.Crim.App.1985). Third, the defendant certainly had the opportunity to investigate whether the blood specimen existed, and, if not, when it was destroyed. Apparently he chose not to do so for reasons only known to him. If bad faith, which could be imputed to the State, motivated the destruction of the specimen, the defendant had every opportunity to present these facts to the trial court. Common sense tells us that you cannot order the production of a sample when the specimen no longer exists.

The defendant's reliance upon T.C.A. § 55–10–410(e) is misplaced. The record is void of any evidence that the defendant requested an additional specimen of blood. See *State v. McKinney*, 605 S.W.2d 842, 846 (Tenn.Crim.App.1980). In *McKinney* this Court held that an officer was not required, as a matter of law, to inform a suspect of his statutory right to obtain a separate sample for the purpose of having his expert perform a test upon the specimen.

■ The defendant next argues that the results of the blood-alcohol test should not have been admitted into evidence because the State failed to establish that the blood specimen was drawn pursuant to T.C.A. § 55–10–406(a)(1). In *State v. Stowers*, 649 S.W.2d 607, 608–609 (Tenn.Crim. App.1983), this Court held that the purpose of this statute is to "protect the donor [defendant] from being subjected to unhealthful conditions in the procurement of a blood sample and to prohibit the donor [defendant] from being subjected to unqualified people taking samples." 649 S.W. 2d at 608. Thus, we are of the opinion the State is not required to prove compliance with this statute as a prerequisite to admitting the results of the blood-alcohol test. In any event the record establishes the blood was drawn by the nurse on duty at an established hospital in the community; and there is no evidence in the record the accused was subjected to unhealthful conditions or the blood was drawn by an unqualified person. See *State v. Stowers*, supra. Moreover, this issue was raised pretrial; and the defendant's own witness established that the test was drawn by a registered nurse in the environment of the Hendersonville Hospital, and it was drawn in compliance with hospital policy.

■ The defendant finally argues that the blood test results should not have been admitted because his right to have his medical records maintained confidential pursuant to T.C.A. § 68–11–304(c) was violated. This argument too is without merit.

It is undisputed in the record that the defendant signed a consent form to have his blood drawn and the specimen provided

to the officer for the purpose of a blood-alcohol test. The officer took the defendant to the emergency room of the Hendersonville Hospital, he directed the nurse to perform the task of drawing blood from the defendant pursuant to the consent form, the blood was drawn and placed in a container provided specifically for blood samples by the Tennessee Bureau of Investigation—Crime Laboratory, the specimen was properly given to the officer in accordance with law, and the specimen was in turn properly forwarded to the Tennessee Bureau of Investigation—Crime Laboratory where an analysis was made. Consequently, T.C.A. § 68–11–304(c) does not apply to the circumstances as hereinabove outlined. The officer did not seek and obtain a hospital record. Furthermore, this statute does not address the obtaining of blood samples.

This issue is without merit.

## ADMISSIBILITY OF T.B.I. REPORT

The defendant contends the trial court committed error of prejudicial dimensions in admitting the report of the T.B.I.—Crime Laboratory concerning the results of the blood-alcohol test. He argues that the report is not properly certified because the report does not indicate the title or capacity of the person signing the report.

We are of the opinion the report is properly certified. The certification reads: "I Certify and attest that this document is the proper record it purports to be [signed] William J. Darby, Authorized Representative (TCA 55–10–410)." The phrase "Authorized Representative (TCA 55–10–410)" is the same as saying Mr. Darby is the duly appointed representative of the director of the Bureau of Investigation. See T.C.A. § 55–10–410(d).

The defendant's reliance upon *State v. Shelton*, 649 S.W.2d 24 (Tenn.Crim.App. 1983) is misplaced. In *Shelton* a person signed the certificate, but there was "no indication whatsoever of who the individual might be." 649 S.W.2d at 28. Here, Mr. Darby states in what capacity he has signed the certificate.

Like *Shelton*, the report was never viewed by the jury nor was it necessary to establish the percentage of alcohol in the defendant's blood by resort to the report. The arresting officer testified concerning the facts incident to the taking of the blood and sending it to the T.B.I. Crime Laboratory. The expert performing the test related the receipt, testing procedure, and the test results as well as the balance of the information contained on the report.

If the certification can be said to be inadequate, any error in the admission of the report was harmless. Tenn.R.App.P. 36(b); Tenn.R.Crim.P. 52(a). See *State v. Shelton*, supra.

This issue is without merit.

## MOTION FOR JUDGMENT OF ACQUITTAL

The defendant contends that the trial court committed error of prejudicial dimensions in denying his motion for judgment of acquittal. He contends the venue of the offense was in Davidson County and not Sumner County.

This issue has been waived. First, the defendant failed to stand on his motion. He testified in support of his defense. *Mathis v. State*, 590 S.W.2d 449, 453 (Tenn. 1979); *State v. Smith*, 735 S.W.2d 859, 862 (Tenn.Crim.App.1987). Second, the defendant has waived this issue by his failure to make reference to the record as mandated by Tenn.R.App.P. 27(a)(7). See also Tenn. Ct.Crim.App. Rule 10; *State v. Smith*, supra.

This issue is without merit.

## EVIDENCE CONCERNING PERSONAL DATA OF THE DEFENDANT

The assistant district attorney general asked the arresting officer to relate the address and date of birth furnished to him by the defendant. The defendant objected to the question on the ground the answer it attempted to elicit would necessarily constitute hearsay. The trial court overruled the objection. The officer was permitted to testify that the defendant told him the data contained on his driver's license was cor-

rect, and he related the defendant's address and date of birth.

We are of the opinion the trial court was correct in permitting the officer to testify regarding the defendant's address and date of birth. The officer had a right to elicit this information regardless of whether the defendant had been given the *Miranda* warnings. See *State v. Williams*, 623 S.W.2d 118, 121 (Tenn.Crim. App.1981). In *Williams* this Court said that a suspect's disclosure of personal information such as his name, age and address is essentially a neutral act; and a law enforcement officer is not required to give the accused the *Miranda* warnings before eliciting this information. Moreover, statements made by a defendant are not considered hearsay evidence. The hearsay evidence rule is not applicable when the declarant is the accused in a criminal prosecution. *State v. Jones*, 598 S.W.2d 209, 223 (Tenn.1980); *State v. Dowell*, 705 S.W.2d 138, 141 (Tenn.Crim.App.1985).

The defendant has failed to demonstrate how he was prejudiced by the introduction of this innocuous data. The State did not use this data to the detriment of the defendant during the guilt stage of the proceeding. His argument that he was denied his right to defend on the predicate offense and stand mute as to the enhancement count is totally without merit. The record does not support this argument. Also, the defendant's argument that he was compelled to invoke his Fifth Amendment privilege when he was asked about his weight and height is groundless. The defendant should have been required to answer the question. When the defendant elected to testify in support of his defense, and took the witness stand, he waived his constitutional rights, federal and state, against self incrimination as to matters which were relevant, material and germane to the issues which the jury would be required to resolve. *Hicks v. State*, 480 S.W. 2d 357, 360 (Tenn.Crim.App.1972); *State v. Hudson*, 631 S.W.2d 716, 719 (Tenn.Crim. App.1981). Thus, the defendant was not entitled to invoke the privilege because the question sought to elicit information which was probative of the issues in controversy.

Furthermore, the information sought to be elicited did not implicate the defendant in a separate or other crime. See *Patterson v. State*, 184 Tenn. 39, 46, 195 S.W.2d 26, 29 (1946).

The expert witness was permitted to testify without objection that the concentration of alcohol in the defendant's blood was 0.21 grams percent. He was also allowed to testify as follows: "If the individual is 150 pounds, this figure [0.21 grams percent] would correlate to approximately 10½ drinks. If the individual was less than 150 pounds, it would read approximately one drink for every thirty pounds lighter." Thus, the weight of the defendant was material in determining whether the defendant had consumed more or less beer than the amount related by the expert. The expert used as an example a 150 pound individual.

In summary, the defendant was not at liberty to select the questions he desired to answer and refuse to answer those questions he didn't want to answer, *Hicks v. State*, supra; *State v. Stapleton*, 638 S.W. 2d 850, 855 (Tenn.Crim.App.1982); *State v. Crabtree*, 655 S.W.2d 173, 177 (Tenn.Crim. App.1983); and the trial court should have required the defendant to answer the question propounded by the assistant district attorney general.

This issue is without merit.

## COMMENT ON SILENCE OF DEFENDANT

The assistant district attorney general asked Officer Brake if the defendant had indicated he was deformed or handicapped during the the field-sobriety tests administered to the defendant.

The defendant's reliance upon *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed. 2d 91 (1976), is misplaced. As the State indicates in its brief, the officer did not give the defendant the *Miranda* warnings until he was taken to jail. Thus, this case is distinguishable from *Doyle v. Ohio*, supra. See *State v. Kennedy*, 595 S.W.2d

836, 838–839 (Tenn.Crim.App.1979). The conduct and questions occurred prior to arrest.

This issue is without merit.

### · SUMMATION

During summation to the jury the assistant district attorney general stated: "Thank God Mr. Brock did what he did. No telling what would have happened if somebody hadn't stopped Mr. Gilbert, because vehicular homicides are made of people like Mr. Gilbert." Defense counsel made a contemporaneous objection to the argument on the ground it was "inflammatory and outside the record." The trial court overruled the objection.

■ This isolated remark by the assistant district attorney general was not inflammatory; and the statement was not predicated upon facts outside the record. However, we are of the opinion the assistant district attorney general exceeded the legitimate bounds of summation in making reference to what may have occurred, i.e., a vehicular homicide.

This error was harmless. In view of the overwhelming evidence of the defendant's guilt this error did not affect the verdict of the jury, nor did it result in prejudice to the judicial process. Tenn.R.App.P. 36(b). In other words, this error did not affect the results of the trial on the merits. Tenn.R. Crim.P. 52(a).

This issue is without merit.

The judgment of the trial court is affirmed.

DUNCAN, P.J., and DAUGHTREY, J., concur.