25 F.3d 1052
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 UNITED STATES of America, Plaintiff-Appellee
v.
Don Curtis SMITH, Defendant-Appellant.
 No. 93-5732.
 United States Court of Appeals, Sixth Circuit.
 May 24, 1994.
 
 Before: MARTIN and BATCHELDER, Circuit Judges, and HULL, District Judge.*
 PER CURIAM.
 
 
 1
 On November 4, 1992, a jury found Don Curtis Smith, Appellant, guilty of possessing approximately forty-eight grams of cocaine base with the intent to distribute, in violation of 21 U.S.C. Sec. 841(a)(1), and of possessing a firearm for use during drug trafficking, in violation of 18 U.S.C. Sec. 924(c). On May 7, 1993, the United States District Court for the Western District of Tennessee sentenced Appellant to 195 months in prison, followed by four years of supervised release.
 
 
 2
 Appellant assigns error to the district court's denial of his motion to suppress evidence. We agree with Appellant's assignment and reverse.[1]
 
 
 3
 * On January 13, 1993, Memphis police officer Matthew Jordan watched the highway for traffic violations from a stationary position between the opposing lanes of traffic. At about 1:20 a.m., a Cadillac driven by Appellant passed by Officer Jordan's parked vehicle. Thirsty, Officer Jordan decided to exit the highway and purchase something to drink. He pulled out after the Cadillac had cleared.
 
 
 4
 While behind the Cadillac on the highway, Officer Jordan noticed the car veer to the right once or twice, tracking--but never crossing--the white line dividing the traffic lane from the emergency lane.[2] Then the officer noticed the Cadillac's right turn signal blinking, even though the next exit was approximately three-fourths of a mile away.
 
 
 5
 Based on these observations, Officer Jordan began to suspect the Cadillac's driver was road-weary or intoxicated. The officer passed the Cadillac for the purpose of observing the driver. Unable to discern the driver's state, Officer Jordan exited the interstate ahead of the Cadillac, hoping to observe the driver further when both cars stopped at the traffic light at the end of the exit ramp. The officer stopped at the traffic light, but the Cadillac stopped in the adjacent lane at least five car lengths before the light.
 
 
 6
 After this maneuver, Officer Jordan decided to pull over the Cadillac. The light turned green, the Cadillac advanced through the intersection, and Officer Jordan turned on his blue lights. The officer ultimately arrested Appellant for driving on a revoked Tennessee license. Following a consensual search, Officer Jordan also arrested Appellant for concealing five bags of a white substance (later determined to be cocaine base) and two firearms with ammunition in the Cadillac's center console.
 
 
 7
 On October 6, 1992, the district court adopted the magistrate's report recommending denial of Appellant's motion to suppress the drugs and guns revealed during the search of the car. Appellant contests this denial, arguing that Officer Jordan lacked reasonable suspicion to justify the stop. We agree.
 
 II
 
 8
 An appellate court applies de novo review to legal conclusions reached by the district court in a suppression hearing. United States v. Sangineto-Miranda, 859 F.2d 1501, 1512 (6th Cir.1988). For an investigative stop to be proper, the officer must have reasonable suspicion supported by articulable facts that criminal activity "may be afoot." Terry v. Ohio, 392 U.S. 1, 30, 88 S.Ct. 1868, 1884-85 (1968); see also United States v. Sokolow, 490 U.S. 1, 7, 109 S.Ct. 1581, 1585 (1989). While police officers may not indulge mere hunches, it is imperative to recognize that
 
 
 9
 when used by trained law enforcement officers, objective facts, meaningless to the untrained, can be combined with permissible deductions from such facts to form a legitimate basis for suspicion of a particular person and for action on that suspicion.
 
 
 10
 United States v. Cortez, 449 U.S. 411, 419, 101 S.Ct. 690, 695-96 (1981). After careful review, we find that Officer Jordan lacked reasonable suspicion of criminal conduct when he pulled over Appellant.
 
 
 11
 The officer suspected road-weariness or intoxication because Appellant (1) tracked the white line between the emergency lane and the right-hand lane of traffic, (2) signaled three-fourths of a mile ahead of the next exit, and (3) stopped on the exit ramp five car lengths before the traffic light at which the police officer waited in his squad car.[3] These observations are not specific, articulable facts sufficient to permit a reasonable inference of intoxication or road-weariness.
 
 
 12
 As to the first factor, Officer Jordan admitted that Appellant's wheel merely tracked the white line separating the traffic and emergency lanes, never crossing it. The officer said that Appellant "did not do this for a great distance, consecutive. What he did was to actually veer over onto the white line once or twice." Thus, the first factor would certainly apply to many, if not most, travelers who are neither road-weary nor intoxicated. As such, the first factor alone could not have reasonably distinguished Appellant from a sober, alert driver.
 
 
 13
 The second factor was likewise innocuous behavior. Officer Jordan testified that overly cautious driving often indicates intoxication or road-weariness. We do not doubt this in the slightest. However, signalling three-quarters of a mile before an exit in the middle of the night may simply reflect unfamiliarity with the highway or reduced visibility due to the darkness. This minor incident, even if overly cautious, does not yield a fair probability of intoxication or fatigue.
 
 
 14
 These two unremarkable factors, considered individually or together, fall short of reasonable suspicion of intoxication or fatigue. The remaining question in our analysis is whether stopping on the exit ramp short of the light was sufficiently unusual conduct to elevate Officer Jordan's inarticulate hunch to a reasonable inference that Appellant was intoxicated or fatigued.
 
 
 15
 To be sure, stopping or parking in the middle of the traveled portion of a highway has supported a finding of reasonable suspicion of intoxication or road-weariness. For example, in State v. Brooks, 356 S.W.2d 272 (Tenn.1962), the officers passed a car stopped on the traveled portion of the road, without lights, late at night. When the officers returned to investigate, the car had begun moving and was weaving slightly on the road. The Supreme Court of Tennessee found this behavior to establish reasonable suspicion for the stop. Id. at 273.
 
 
 16
 Also, in State v. Gilbert, 751 S.W.2d 454, 457 (Tenn.Crim.App.1988), the defendant's truck was weaving between the shoulder of the highway and the left-hand lane. When the truck stopped for traffic lights, it stopped between fifty and sixty feet before the intersection. These facts articulated a reasonable suspicion of intoxication. Id. at 458.
 
 
 17
 The instant case, however, does not rise to the level of either Brooks or Gilbert. The most that can be said is that Appellant stopped too far in advance of the traffic light, arguably bolstering Officer Jordan's conclusion that Appellant's judgment of distances was likely impaired. Even so, it cannot be said that Appellant in this case was "weaving," nor can it be said that he repeatedly stopped sixty feet in front of intersections. Furthermore, unlike the instant case, the officer in Gilbert acted in part on a citizen's tip, and such tips tend to go a long way towards demonstrating reasonable suspicion. See, e.g., United States v. Roberts, 986 F.2d 1026, 1029-30 (6th Cir.), cert. denied, 114 S.Ct. 271 (1993); State v. Brothers, 828 S.W.2d 414, 416 (Tenn.Crim.App.1991). Appellant's conduct on the exit ramp could not by itself create reasonable suspicion of intoxication or road-weariness, and the addition of the first two factors, themselves ordinary, does not alter the analysis.
 
 
 18
 Officer Jordan also suggested that Appellant stopped well ahead of the intersection, not simply due to impaired judgment of distance, but due to a desire to avoid contact with the police. Attempting to elude an officer can support a finding of reasonable suspicion. In this case, though, the alleged attempt to avoid Officer Jordan was ambiguous, as compared with accelerating quickly or turning sharply and unexpectedly. Even if Appellant had demonstrated unmistakable apprehension at the sight of the patrol car, we do not believe that such apprehension, considering the two factors treated above, could have triggered reasonable suspicion of the particular criminal conduct Officer Jordan named. A suspicion of undefined criminal conduct is no more than a hunch; a hunch, even though correct, is not sufficient to support a stop.
 
 
 19
 In sum, we conclude that Appellant's premature stopping on the exit ramp was insufficient to create reasonable suspicion either alone or in combination with the other two factors. In reaching this conclusion, we note that this case was a difficult one. Specifically, this Court paused over the fact that Officer Jordan's assignment at the time of the investigatory stop was to patrol for traffic violators on the highway. An officer on highway patrol is properly sensitive to conduct which suggests intoxication or road-weariness, conduct which the layperson may find entirely common. Nevertheless, even considering a police officer's training and experience, we cannot say Officer Jordan acted on reasonable suspicion in pulling over Appellant.
 
 III
 
 20
 For the foregoing reasons, the investigatory stop of Appellant was an unreasonable seizure under the fourth amendment. Evidence of the drugs and guns subsequently found in the Cadillac should have been excluded. See Wong Sun v. United States, 371 U.S. 471, 487-88, 83 S.Ct. 407, 417 (1963). Therefore, we REVERSE the judgment of the district court denying Appellant's motion to suppress, VACATE Appellant's conviction, and REMAND the case to the district court for further proceedings consistent with this opinion.
 
 
 
 *
 The Honorable Thomas G. Hull, District Judge for the Eastern District of Tennessee, sitting by designation
 
 
 [1]
 Appellant assigns three additional errors. As an alternative ground for suppressing the evidence, Appellant asserts that his consent to the search of the Cadillac he was driving was involuntary. Appellant next challenges a jury instruction and the enhancement of his sentence due to obstruction of justice. Because of our conclusion on Appellant's first assignment of error, we do not review the consent issue, the jury instructions, or the sentence enhancement
 
 
 [2]
 Appellant denies each of the unusual driving incidents to which Officer Jordan testified, and the district court did not make unambiguous factual findings in this regard. When reviewing the denial of a motion to suppress evidence, we are required to consider the evidence in the light most favorable to the government. United States v. Garza, 10 F.3d 1241, 1245 (6th Cir.1993). As discussed below, we find that Officer Jordan lacked reasonable suspicion of road-weariness or intoxication to justify stopping Appellant, even under the government's version of the facts
 
 
 [3]
 Officer Jordan testified that road-weariness and intoxication were his sole concerns in pulling over Appellant. In other words, Officer Jordan never claimed that Appellant's behavior gave rise to a suspicion of other criminal conduct, such as the transportation of drugs