# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT NASHVILLE

### SEPTEMBER SESSION, 1998

FILED

October 30, 1998

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | C.C.A. NO. 01C01-9708-CC-00335 |
| | ) | |
| Appellee, | ) | |
| | ) | RUTHERFORD COUNTY |
| V. | ) | |
| | ) | |
| | ) | HON. J.S. DANIEL, JUDGE |
| CHARLES MADISON BLACKMAN, JR. | ) | |
| | ) | |
| Appellant. | ) | (DUI, SECOND OFFENSE) |

FOR THE APPELLANT:                    FOR THE APPELLEE:

**SAM E. WALLACE, JR.**              **JOHN KNOX WALKUP**
227 Second Avenue, North             Attorney General & Reporter
Second Floor
Nashville, TN  37201                 **GEORGIA BLYTHE FELNER**
                                     Assistant Attorney General
                                     2nd Floor, Cordell Hull Building
                                     425 Fifth Avenue North
                                     Nashville, TN  37243

                                     **WILLIAM C. WHITESELL**
                                     District Attorney General
                                     Third Floor Judicial Building
                                     Murfreesboro, TN  37130

OPINION FILED _____

AFFIRMED

THOMAS T. WOODALL, JUDGE

# OPINION

Charles Madison Blackman, Jr., appeals as of right following his conviction in the Rutherford County Criminal Court. Following a trial by jury, the Defendant was convicted of driving under the influence, second offense. Defendant filed a motion for judgment of acquittal and for new trial which was denied by the trial court. In this appeal, Defendant contests the sufficiency of the evidence. We affirm the judgment of the trial court.

When an accused challenges the sufficiency of the convicting evidence, the standard is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979). On appeal, the State is entitled to the strongest legitimate view of the evidence and all inferences therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden in this court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982); State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973).

Questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact, not this court. State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App.), perm. to appeal denied, id. (Tenn. 1987). Nor may this court reweigh or reevaluate the evidence. Cabbage, 571 S.W.2d at 835. A jury verdict

approved by the trial judge accredits the State's witnesses and resolves all conflicts in favor of the State. Grace, 493 S.W.2d at 476.

As no transcript of the trial was available, the Defendant filed a statement of the evidence pursuant to Rule 24(c) of the Tennessee Rules of Appellate Procedure. Following the trial court's approval, this statement was made part of the record for our review. Tenn. R. App. P. 24(f).

Carrie Blair testified that she was driving on South Lowery Street in Smyrna, Tennessee, proceeding south in the fast lane on November 27, 1996 when she was involved in a wreck with the Defendant's vehicle. She was driving approximately 35 miles per hour in the lane closest to the turning lane. While Blair did not see the Defendant's vehicle until after she had been hit, she believed his vehicle was moving in the turn lane. That vehicle struck her car on the left side, then the back bumper struck the front bumper of her vehicle. After spinning around and ending up in the turning lane, the two vehicles were locked together.

Blair stated that following the accident the Defendant approached her and asked if she was alright. He was "noticeably staggering," with slurred speech. Defendant stated that he was going to call the police, then walked away from the scene. When he returned to the scene, a woman was with him and Blair has since learned that the woman is the Defendant's wife, Dolores Blackman. Blair witnessed Mrs. Blackman removing a cup of alcohol from the Defendant's vehicle.

On cross-examination, Blair admitted that she was in shock during these events and that she had not advised the police about anything being removed from

the Defendant's vehicle, and that she could not be sure it was a cup which Mrs. Blackman removed.

Jeff Dwyer, an officer with the Smyrna Police Department, testified that he was dispatched to the scene of a traffic accident on South Lowery Street on November 27, 1996. When Dwyer arrived to interview the accident victims, he found the Defendant to have an "uncooperative demeanor and was unsteady on his feet." Dwyer further observed Defendant's eyes to be glassy and red and that he had the odor of an intoxicant. When Defendant attempted to retrieve his driver's license from his wallet, he dropped the wallet to the ground. Dwyer described traffic as heavy at the time. During his interview of the Defendant, Defendant stated that Blair's vehicle had struck his own vehicle.

Because Dwyer suspected the Defendant was intoxicated, he asked him to submit to several field sobriety tests. First, Defendant was asked to hold one (1) foot near the bumper of the police car while standing on his other foot, then to count to thirty (30) slowly. Defendant failed this test "because he was unable to keep his balance on one foot and had to put both feet on the ground." Next, Dwyer asked Defendant to repeat the alphabet, which he was unable to successfully repeat. In Dwyer's opinion, Defendant was confused and intoxicated. Defendant admitted to drinking one (1) beer. Upon observation of both vehicles, Dwyer stated that the damage to both vehicles was consistent with Blair's account of the accident.

During cross-examination, Dwyer recalled that he had made approximately 100 DUI arrests after receiving training in DUI investigation at the police academy. After informing Defendant that he was under arrest, the Defendant became

argumentative, cursing and pulling away when the handcuffs were placed on him. After being transported to the Smyrna Police Department, Lieutenant Earl Barnes attempted to administer the intoximeter test to determine the alcohol content of Defendant's blood. Dwyer observed that Defendant either could not or would not blow hard enough into the machine for a sufficient sample to be taken.

Lieutenant Earl Barnes testified that he arrived on the scene after Officer Dwyer, and that he detected an odor of alcohol about the Defendant. The Defendant's speech was slurred, and after having been given two separate chances to recite the alphabet, the Defendant was still unable to do so correctly. Defendant was also unable to successfully complete the "foot-to-bumper" test. After transporting the Defendant to the police station, he was calm and cooperative. When Barnes attempted to administer the intoximeter test, he read the implied consent law to the Defendant. Defendant merely pretended to blow into the tube which carried the air to the machine during several attempts to complete the test, with the result of the intoximeter test being "insufficient sample."

On cross-examination, Barnes stated that the tube Defendant used was new and had no obstructions. Barnes did not demonstrate the tests to the Defendant prior to asking him to complete the tests, and he admitted that the tests administered were "non-standardized."

This was the conclusion of the State's case-in-chief.

Dolores Blackman, the Defendant's wife, testified that she was waiting for her husband to pick her up after work. He arrived at her office, advising her that he had

been involved in an accident nearby. She followed her husband outside to the scene of the accident, which was only about thirty (30) yards from her office. Mrs. Blackman did not notice any unusual walk or slurred speech by her husband, nor did she detect an odor of alcohol. Upon arrival at the scene, Blackman stated that she did not go into the van and remove any items. After the police arrived on the scene, the officers attempting to handcuff her husband were treating him roughly, jerking his arm because it would not bend in the way the police tried to force it to bend.

Pat Looper, an instructor at the police academy, testified as to the proper performance of field tests on subjects suspected of intoxication. The three (3) tests which are both standardized and approved by the National Highway Transportation Safety Administration are: (1) horizontal gaze nystagmus; (2) walk nine (9) steps, heel to toe, and return; and (3) balance with one (1) foot six (6) inches off the ground for a period of thirty (30) seconds. On cross-examination, Looper could not recall how long these tests had been standardized in this fashion and recollected that he had used other field sobriety tests himself when working as a State Trooper. He acknowledged that the use of these non-standardized tests did not invalidate the Defendant's arrest.

Aletta Kelly, a cousin of the Defendant, testified that he came to pick her up on the afternoon of November 27, 1996. After picking her up and driving to his residence in Antioch, they drove to pick up Mrs. Blackman at work in Smyrna. During that time period, Kelly did not observe the Defendant drink any alcohol nor did she notice the odor of any alcohol. From her observations of the Defendant's driving, his appearance, and his speech, there was nothing to indicate that he was intoxicated.

The Defendant testified that on November 27, 1996, he was off from work and picked up his cousin, Aletta Kelly, in Dickson. They drove back to Smyrna to pick up his wife shortly after 4:00 p.m. Defendant stated that he was in the turn lane on South Lowery Street, moving slowly, and that a van came from his right and struck his vehicle. Both vehicles began to spin and then locked bumpers. When Defendant went to check on the driver of the other vehicle, Carrie Blair, she admitted that the accident was her fault.

Defendant walked over to his wife's office to call the police, then he and his wife returned to the scene. When Officer Dwyer arrived, Defendant reached for his driver's license in his wallet, and several cards fell out of it. Defendant denied drinking any alcohol or being intoxicated. He further denied that his speech was slurred or that he staggered when he walked. When asked to recite the alphabet, Defendant became amused and laughed. He did submit to the test in which he was asked to stand on one foot. Because the officer twisted his arm in a "very unnatural position," Defendant jerked his arm while being handcuffed.

After arriving at the police station, Defendant agreed to take the intoximeter test and blew as hard as he could three (3) separate times into the machine. On all three (3) occasions, the machine registered "zero," showing that he had no alcohol to drink. On cross-examination, Defendant admitted to advising the police that he had one (1) beer to drink, but that it was a joke. When questioned as to his telling an insurance investigator that a red car was involved in the accident, Defendant admitted that he had not told the police about the red car. While he claimed the damage to the vehicles was different than what the police had testified to, he failed to bring a picture he had which indicated the actual damages.

-7-

Charles Blackman, Sr., testified that the Defendant is his son. He went to the police station on November 27, 1996, and observed his son being given the intoximeter test. His son appeared to blow as hard as possible into the machine. The Defendant appeared to be both walking and talking normally, and, in his opinion, was not impaired in any way.

The State called Lieutenant Barnes as a rebuttal witness. Barnes advised that the Defendant was given the intoximeter test in a secured area, which is closed to the public, and that Charles Blackman, Sr., could not have observed the administration of the test.

A person is guilty of driving under the influence of an intoxicant if he is driving or in physical control of a motor vehicle upon a public thoroughfare while under the influence of an intoxicant or drug. Tenn. Code Ann. § 55-10-401. This offense may be proven solely by circumstantial evidence. State v. Gilbert, 751 S.W.2d 454, 459 (Tenn. Crim. App. 1988) (citations omitted). The Defendant does not contest the fact that he was driving his vehicle while on a public thoroughfare, only that he was under the influence of an intoxicant. Taken in the light most favorable to the State, the record in this case demonstrates that Defendant had an unsteady gait, slurred speech, odor of alcohol, and glazed eyes. When asked to show the police his driver's license, he fumbled and dropped his wallet. In addition, he was unable to successfully complete any of the field sobriety tests which the police officers administered. Finally, the Defendant himself admitted to the police officers that he had been drinking. This is more than sufficient evidence whereby a rational trier of fact could have found the Defendant guilty beyond a reasonable doubt of driving under the influence. There is no requirement that any more than the above

testimony is required of the State to prove its case.  See <u>State v. Vasser</u>, 870 S.W.2d 543, 544 (Tenn. Crim. App. 1993).  This issue is without merit.

While not addressed in his motion for new trial, the Defendant suggests that the State failed to produce "potential exculpatory evidence" by declining to use the videotape equipment which the police cars are equipped with to videotape the Defendant's performance on the field sobriety tests.  In <u>Brady v. Maryland</u>, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the United States Supreme Court held that the State has a duty to furnish the accused with any exculpatory evidence pertaining to either guilt or innocence or to possible punishment upon conviction.  In addition to this issue being waived due to the Defendant's failure to raise this issue in his motion for new trial pursuant to Rule 3(e) of the Tennessee Rules of Appellate Procedure, the "potential" of exculpatory evidence does not trigger the mandates of <u>Brady</u>.  As there was no videotape, there can be no violation of <u>Brady</u> as no exculpatory evidence was available.

After reviewing the record and the law in the case <u>sub judice</u>, we affirm the judgment of the trial court.

_____
THOMAS T. WOODALL, Judge

CONCUR:


_____
GARY R. WADE, Presiding Judge

_____
J. CURWOOD WITT, JR., Judge