# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
May 13, 2009 Session

## STATE OF TENNESSEE v. PHILLIP GRAY STEWART

**Appeal from the Circuit Court for Franklin County**
**No. 16727     J. Curtis Smith, Judge**

---

**No. M2008-01331-CCA-R3-CD - Filed July 15, 2009**

---

The Defendant, Phillip Gray Stewart, was convicted in the Franklin County Circuit Court of driving under the influence, second offense. The trial court sentenced the Defendant to eleven months and twenty-nine days, with forty-five days to be served in the county jail. In this direct appeal, the Defendant challenges the sufficiency of the convicting evidence. Following a review of the record, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the court, in which ALAN E. GLENN and ROBERT W. WEDEMEYER, JJ., joined.

Robert L. Marlow, Counsel, and Mary C. White, Co-Counsel, Shelbyville, Tennessee, for the appellant, Phillip Gray Stewart.

Robert E. Cooper, Jr., Attorney General and Reporter; Lacy Wilber, Assistant Attorney General; J. Michael Taylor, District Attorney General; and David McGovern, Assistant District General, for the appellee, State of Tennessee.

## OPINION

### Factual Background

On November 7, 2005, a Franklin County grand jury returned a four-count indictment against the Defendant, charging him with driving under the influence of an intoxicant (DUI); being a second-time DUI offender; violating the implied consent law; and reckless driving. A jury trial was held.

Officer Henry Lamar Howard of the Winchester Police Department testified that on July 23, 2005, he was on patrol when he noticed a white Cadillac traveling north on North High Street. The Cadillac crossed over the double yellow line and then went back into its lane. At this time, Officer

Howard did not think it was "a big deal." Continuing down North High Street, the car again crossed over the double yellow line and then back into its lane. Officer Howard now believed the situation to be "[a] little more serious," so he started to pay closer attention to the vehicle. After the third time the car crossed over the double yellow line, Officer Howard activated his blue lights and initiated a stop of the vehicle. Two or three blocks later, the Defendant, who was the driver of the automobile, pulled the vehicle into the parking lot of J&J Creek Side Market. The vehicle belonged to the Defendant's wife.

When Officer Howard approached the driver's side of the vehicle and asked the Defendant for his driver's license, he detected an odor of alcohol. As they conversed, Officer Howard continued to smell alcohol, so he asked the Defendant to step out of the vehicle so he could conduct a DUI investigation. When the Defendant exited the car, Officer Howard observed that the Defendant's eyes were "red and glassy." Also during the investigation, Officer Howard saw that the Defendant was unsteady on his feet: "[H]e had a little sway as he just stood there."

The Defendant told Officer Howard that he had consumed "a couple of drinks" with his meal. According to Officer Howard, the Defendant spoke very loudly and cursed profusely during the encounter. The Defendant repeatedly stated that he knew the police chief and his wife and that they were going on a trip together.

When asked if he would perform any field sobriety tests, the Defendant initially refused. Officer Howard then requested that the Defendant count backward from seventy-nine to sixty-four. The Defendant stopped at sixty. Officer Howard then gave the Defendant an alphabet test-—stating the alphabet forward from E to P. The Defendant attempted this task several times but, when he was unsuccessful, he would curse loudly and state that he had not been in school in twenty years. Officer Howard then demonstrated the "nine steps walk-and-turn" test, which the Defendant refused to attempt. The Defendant also declined to perform the "one-legged stance" test. At this point, Officer Howard placed the Defendant under arrest for DUI because, in his opinion, the Defendant was under the influence of alcohol.

The Defendant was placed in the back of Officer Howard's patrol car. Officer Howard read the implied consent form to the Defendant, but the Defendant talked and cursed during the reading. The Defendant signed the form, acknowledging that he was unwilling to submit to a Breathalyzer or blood alcohol content test. Thereafter, the Defendant was transported to the Franklin County Jail.

On cross-examination, Officer Howard was questioned about discrepancies in his testimony at the preliminary hearing and his answers at trial. Officer Howard did not recall stating that he first saw the vehicle on Second and College Streets, that he followed the car around the town square, and that he did not offer the Defendant any field sobriety tests. Officer Howard confirmed that his patrol car was equipped with a video camera; however, the camera was not working at the time he stopped the Defendant. He did not remember testifying at the preliminary hearing that his car did not have a camera.

Prior to the stop, Officer Howard knew of the Defendant and his wife. On redirect, Officer Howard insisted that he did not stop the vehicle in an attempt to get the Defendant's wife fired from her city government job.

Next to testify was Officer Stacy Shrum, also with the Winchester Police Department. Officer Shrum arrived on the scene after Officer Howard stopped the Defendant's vehicle. Officer Shrum came within several feet of the Defendant and saw that the Defendant's eyes were red. According to Officer Shrum, the Defendant was agitated at being stopped by the police, and the Defendant kept stating that he and his wife were good friends with the chief of police and that they were going on vacation together. Officer Shrum witnessed Officer Howard read the implied consent form to the Defendant and the Defendant then sign the form. Officer Shrum did not record the incident because he shared his car with another officer and he did not have the voice recorder for the camera in his possession. Finally, Officer Shrum confirmed that he knew of the Defendant and his wife but he was in no way trying to harass them.

On cross-examination, Officer Shrum stated that the Defendant's car was not towed but that someone came to pick it up. When asked if he used forms for release of liability when vehicles were not towed, Officer Shrum answered, "No." He also did not recall anyone stating to the Defendant that the form he signed was such a release. Officer Shrum believed it was still daylight when this incident occurred; however, the incident report showed that it happened at 11:40 p.m. Finally, Officer Shrum testified that he was present when Officer Howard asked the Defendant to perform the field sobriety tests but that the Defendant refused.

Jerri Elaine "Bertie" Walker, previously a corrections officer at the Franklin County Sheriff's Department, was the next witness for the State. She stated that she knew the Defendant and that she considered him a friend. She was not aware of any efforts to get the Defendant's wife fired from her job. On the evening of July 23, the Defendant was brought into the station for DUI, and she proceeded with the booking process. Officer Walker observed that the Defendant was unsteady on his feet, and she believed he was under the influence of alcohol. The Defendant told her that he had consumed "a few beers" that night.

Thereafter, Officer Walker was visiting her mother in Cowan, when the Defendant showed up. The Defendant asked her "not to testify in court against him for his DUI." He approached her a second time in the courthouse and again requested that she not testify against him.

On cross-examination, Officer Walker relayed that she was terminated from the sheriff's office sometime following the Defendant's visits to her. Also, she reported the Defendant's request to the district attorney general's office.

The Defendant played for the jury the recording of Officer Howard's testimony at the September 22, 2005 preliminary hearing. The recording was not entered as substantive evidence.[1] Moreover, the trial court instructed the jury that the tape could only be used to test the credibility of Officer Howard.

Brenda Long was the first witness for the defense. She testified that she had known the Defendant for twenty years and that they were friends. After the Defendant's arrest, Ms. Long was called to pick him up from jail. She arrived at the jail around 12:30 a.m. According to Ms. Long, the Defendant did not smell of alcohol, his eyes were not red or glazed, he was not unsteady on his feet, and he was not irritable or cursing.

Ms. Long stated that she encountered Officer Walker while at the jail. According to Ms. Long, Officer Walker asked her if she was there to pick up the Defendant, to which Ms. Long replied, "Yes." Then, Officer Walker stated to Ms. Long, "But between me and you, he's not drunk."

The Defendant testified on his own behalf. He stated that, on the evening of July 23, he left the Oasis, located on College Street, and was headed home when he was pulled over. He had eaten supper and "drank a beer."

When Officer Howard asked him to state the alphabet backwards from T to E, he laughed and replied that it had been twenty years since he had been in school. Officer Howard also asked him to count backwards from seventy to another number, which he did successfully. The Defendant claimed that he told Officer Howard he could walk a straight line but that he could not do the "heel-to-toe" test because of a back problem. The Defendant also believed that he had completed other tasks, pointing his finger to his nose and holding out his arms out. The Defendant explained to Officer Howard why he "might have" crossed the double yellow line: It was his wife's Cadillac, he had only driven the car twice, and the windshield fogged up "all of sudden."

On cross-examination, the Defendant stated that he believed the officers were "pulling a prank" on him in return for a prank the Defendant had played on his friend, the chief of police. When he realized the officer was not joking, he "calmed [his] attitude down."

According to the Defendant, he asked Officer Howard to administer a Breathalyzer test, but Officer Howard stated that the machine was broken. When asked if he would submit to a blood alcohol content test, the Defendant said yes, but only if his family physician could draw the blood because he did not trust the officers.

When asked why he signed the implied consent form, the Defendant testified that he thought he was signing a form releasing the city from liability for leaving his car in the market parking lot. If Officer Howard read the form to him, he did not hear it, and he was unable to read it on his own

---

[1] The recording is not included in the record on appeal.

because he did not have his glasses with him and it was dark. He believed that, if he did not sign the form, his car would be towed.

The Defendant affirmed that he told Officer Walker at the jail that night that he had consumed a beer. He claimed he went over to Officer Walker's mother's house at the request of her mother to fix the driveway. He did not know Officer Walker would be present when he arrived. He denied asking her not to testify against him.

On redirect, the Defendant claimed that Officer Walker approached him at the Dogwood Festival. Walker asked him to loan her husband a truck, help him get a commercial driver's license, and help him find a job. In exchange, she would be able to move away from the area and could not be forced to testify against the Defendant. The Defendant asserted that Officer Walker wrote her cellular telephone number on a hot dog wrapper. He never rendered any assistance to Officer Walker. According to the Defendant, he just laughed at her and did not report the incident to anyone.

Roxanne Yarborough, the Defendant's sister-in-law, testified that she overheard this conversation between the Defendant and Officer Walker. She remembered this conversation because she thought it was "odd." Ms. Yarborough had previously been employed as a court deputy.

On cross, examination, Ms. Yarborough acknowledged that she did not notify the authorities about this conversation. She believed it was not "any of [her] business," although she did think it sounded like a "bribe." According to Ms. Yarborough, she was only to report strange events occurring inside the courthouse, not outside.

Following the conclusion of proof, the Defendant was found guilty of DUI, second offense, a Class A misdemeanor.[2] See Tenn. Code Ann. §§ 55-10-401, -403.[3] A sentencing hearing was held, and the trial court sentenced the Defendant to eleven months and twenty-nine days in the county jail. His sentence was to be suspended following service of forty-five days, and the Defendant was to be placed on probation.

The Defendant filed a motion for new trial, which was denied. This appeal followed.

**Analysis**

The Defendant raises a single issue for our review: whether the evidence was sufficient to support his DUI conviction beyond a reasonable doubt. Tennessee Rule of Appellate Procedure 13(e) prescribes that "[f]indings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt." A convicted criminal defendant who challenges the sufficiency of the evidence

---

[2] The reckless driving charge was dismissed.

[3] There is some discrepancy in the amount of the fine imposed. The trial transcript and the guilty verdict form indicate that the jury imposed a fine of $350; however, the judgment form provides that a $600 fine was assessed.

on appeal bears the burden of demonstrating why the evidence is insufficient to support the verdict, because a verdict of guilt destroys the presumption of innocence and imposes a presumption of guilt. See State v. Evans, 108 S.W.3d 231, 237 (Tenn. 2003); State v. Carruthers, 35 S.W.3d 516, 557-58 (Tenn. 2000); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). This Court must reject a convicted criminal defendant's challenge to the sufficiency of the evidence if, after considering the evidence in a light most favorable to the prosecution, we determine that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); State v. Hall, 8 S.W.3d 593, 599 (Tenn. 1999).

On appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable and legitimate inferences which may be drawn therefrom. See Carruthers, 35 S.W.3d at 558; Hall, 8 S.W.3d at 599. A guilty verdict by the trier of fact accredits the testimony of the State's witnesses and resolves all conflicts in the evidence in favor of the prosecution's theory. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). Questions about the credibility of witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, and this Court will not re-weigh or re-evaluate the evidence. See Evans, 108 S.W.3d at 236; Bland, 958 S.W.2d at 659. Nor will this Court substitute its own inferences drawn from circumstantial evidence for those drawn by the trier of fact. See Evans, 108 S.W.3d at 236-37; Carruthers, 35 S.W.3d at 557.

The Defendant was convicted of DUI in violation of Tennessee Code Annotated section 55-10-401(a)(1), which states that it is unlawful for a person "to drive or to be in physical control of any automobile or other motor driven vehicle on any of the public roads and highways of the state . . . while: (1) under the influence of any intoxicant . . . ." Tenn. Code Ann. § 55-10-401(a)(1). No blood alcohol test need be administered for a conviction of driving under the influence. State v. Gilbert, 751 S.W.2d 454, 459 (Tenn. Crim. App. 1988). Additionally, pursuant to Tennessee Code Annotated section 55-10-403, the conviction and punishment are enhanced if a defendant has prior DUI convictions.

The Defendant's DUI sufficiency argument is based upon the witnesses' credibility: "Officer Howard's testimony at trial was significantly contradictory to his earlier testimony at the preliminary hearing;" Officer Shrum testified that it was still daylight when he arrived on the scene, although the proof showed it was 11:30 p.m.; and no video was taken of the stop.

The evidence in this case, viewed in the light most favorable to the State, showed that the Defendant crossed over the double yellow line three times before he was stopped by Officer Howard. Officer Howard observed that the Defendant smelled of alcohol, had "red and glassy" eyes, and was unsteady on his feet. Officer Shrum also testified that the Defendant had red eyes. The Defendant told Officer Howard he had consumed "a couple of drinks" with dinner. Officer Howard asked the Defendant to perform several field sobriety tests, and the Defendant refused to take some tests and did poorly on others. The Defendant was unruly and cursed loudly throughout the incident. The Defendant refused a Breathalyzer or blood alcohol content test and signed the implied consent form after it was read to him by Officer Howard. Officer Howard opined that the Defendant was

-6-

intoxicated at the time he was stopped. When the Defendant arrived at the jail for booking, Officer Walker saw that the Defendant was unsteady on his feet and under the influence of alcohol. He also relayed to Officer Walker that he had consumed "a few beers." The Defendant later approached Officer Walker on two occasions and asked her not to testify against him in court. A certified copy of the Defendant's previous DUI conviction was entered into evidence.

We note that this Court has often found that an arresting officer's testimony alone is sufficient to support a defendant's conviction for driving under the influence of an intoxicant. See, e.g., State v. Vasser, 870 S.W.2d 543, 544 (Tenn. Crim. App. 1993). Moreover, the State is not required to use video evidence of the stop to support the officer's testimony. Furthermore, all the arguments advanced in the Defendant's appellate brief go to the weight of the evidence and credibility of the witnesses. The Defendant played the tape of Officer Howard's testimony at the preliminary hearing for the jury, but we cannot review that tape as it was not entered as an exhibit and is not included in the record on appeal. Moreover, the tape went to Officer Howard's credibility, and the jury obviously accredited the testimony of Officer Howard, Officer Shrum, and Officer Walker. We reiterate that this Court will not re-weigh or re-evaluate the evidence. See Evans, 108 S.W.3d at 236. Questions about the credibility of witnesses, the weight and value of the evidence, as well as factual issues raised by the evidence are to be resolved by the trier of fact. Id. Accordingly, we conclude there was sufficient evidence to support the Defendant's conviction, and he is not entitled to relief on this issue.

**Conclusion**

In accordance with the foregoing, we conclude that the evidence is sufficient to support the Defendant's DUI, second offense, conviction beyond a reasonable doubt. Accordingly, the judgment of the Franklin County Circuit Court is affirmed.

_____
DAVID H. WELLES, JUDGE