# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT KNOXVILLE

## APRIL 1999 SESSION

FILED

October 12, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE**, | * | C.C.A. NO. 03C01-9808-CR-00278 |
| Appellee, | * | HAMBLEN COUNTY |
| v. | * | Hon. James E. Beckner, Judge |
| **DAVID E. HANCOCK**, | * | (DUI-Second Offense) |
| Appellant. | * | |

For Appellant:

P. Richard Talley
P.O. Box 950
Dandridge, TN  37725

For Appellee:

John Knox Walkup
Attorney General and Reporter
450 James Robertson Parkway
Nashville, TN  37243-0493

Todd R. Kelley
Assistant Attorney General
Criminal Justice Division
425 Fifth Avenue North
Nashville, TN  37243-0493

John Dugger
Assistant District Attorney General
510 Allison Street
Morristown, TN  37814

OPINION FILED: _____

AFFIRMED

NORMA MCGEE OGLE, JUDGE

## OPINION

On March 23, 1998, the appellant, David E. Hancock, was convicted by a jury in the Hamblen County Criminal Court of driving under the influence (DUI), second offense. The trial court imposed a sentence of eleven months and twenty-nine days, with a minimum of twenty percent to be served prior to release. The trial court also suspended the appellant's driver's license for two years.

In this appeal as of right, the appellant presents the following issues for our review:

(I) Whether the evidence is sufficient to sustain the appellant's conviction of DUI; and

(II) Whether certain statements made by the prosecuting attorney during closing argument constituted prosecutorial misconduct.

Following a review of the record and the parties' briefs, we affirm the judgment of the trial court.

## I. Factual Background

On June 8, 1997, the appellant was driving a Peterbilt truck on Old Kentucky Road in Hamblen County.[1] As the appellant attempted to navigate a sharp turn, he lost control of the truck and went off the road. When the appellant tried to steer back onto the road, he overcorrected and traveled across the road into Edward Fox's yard. Carroll Talley, who was traveling behind the truck, witnessed the accident.

Talley testified on behalf of the State that on June 8, 1997, at approximately 4:30 p.m., he was driving west on Old Kentucky Road, when a truck driven by the

---

[1] The appellant was driving the truck tractor without the trailer attached.

appellant pulled out of a side street into his lane of traffic. Talley was forced to decrease his speed to avoid a collision with the appellant. Talley testified that he had followed the appellant for approximately one-half to three-quarters of a mile when the appellant reached a sharp curve in the road and veered off the right side of the road. As the appellant overcorrected, his truck traveled back across the road, and crashed into Edward Fox's yard. In the process, the appellant damaged shrubbery, a road sign, and a mailbox. Talley stated that the appellant's truck was not forced off the road by another vehicle.

After witnessing the accident, Talley stopped his car and went to the residence on the property where he located the property owner, Edward E. Fox. Talley testified that when he and Fox returned to the accident scene, the appellant was repeatedly driving the truck forward and backward in an attempt to free it from the shrubbery. Fox approached the truck and attempted to talk to the appellant; however, the appellant did not acknowledge his presence. Instead, the appellant continued his attempts to extricate his truck from the shrubbery for approximately 20 to 30 minutes, until the police arrived. Talley testified that the appellant fell as he exited the truck. However, Talley was not aware of any injuries to the appellant and stated that the appellant was cooperative with the police.

Edward E. Fox, a resident on Old Kentucky Road, testified that during the afternoon of June 8, 1997, an accident occurred in his yard. Fox testified that shortly thereafter, Talley came to his door and notified him of the accident. When he and Talley returned to the accident scene, Fox noticed that his shrubbery was damaged. He recalled that the appellant was in his truck and was apparently trying to free it from the shrubbery by repeatedly driving it forward and backward. The appellant did not leave the truck to survey the damage until the police arrived. Fox

3

also testified that the appellant fell as he stepped out of his truck. Moreover, Fox observed some of the field sobriety tests administered by the police, and based on his observations, opined that the appellant was under the influence of an intoxicant. Fox further noted that the curve on which the appellant lost control of his truck was a "bad curve" and had been the scene of a number of accidents in recent years.

The state also presented the testimony of Jeff Atkins, a deputy sheriff with the Hamblen County Sheriff's Department. Officer Atkins testified that on June 8, 1997, at approximately 4:07 p.m., he was dispatched to an accident on Old Kentucky Road. He arrived at the scene of the accident at approximately 4:24 p.m. Deputy Atkins immediately observed a Peterbilt truck which had apparently crashed into a yard adjacent to the road. Deputy Atkins also noted that the truck had damaged shrubs, fence posts, and a street sign. When Deputy Atkins arrived, the appellant was in his truck and was trying to drive the vehicle.

Deputy Atkins further testified that when he was able to get the appellant's attention, he told the appellant to exit the truck. As the appellant opened the door, Deputy Atkins smelled alcohol. Moreover, the appellant stumbled upon exiting, and Deputy Atkins recalled assisting the appellant out of the truck. Deputy Atkins then asked the appellant if he had been drinking, and the appellant replied, "No sir." When Deputy Atkins questioned the appellant regarding the cause of the accident, the appellant told him that another vehicle had forced him off the road. At some point, Deputy Atkins noticed that the appellant had a "black eye," and inquired whether the appellant needed medical treatment. The appellant refused medical treatment, stated that he had struck the rear view mirror and, "was just fine." Furthermore, Deputy Atkins also discovered an empty beer can in the truck.

4

Although Deputy Atkins did not administer the field sobriety tests, he observed the appellant perform the tests. Deputy Atkins recalled that the appellant was cooperative and followed instructions, but he performed poorly. Also, he noted that the appellant "had an odor of alcohol about him." Based on the appellant's performance and his other observations, Deputy Atkins concluded that the appellant was intoxicated and not injured. Later, while Deputy Atkins was transporting the appellant to the Morristown Police Department to administer an Intoximeter test, he again asked the appellant if the appellant had consumed any alcohol that day. The appellant replied that he had drunk one beer.

Hugh Moore, a Captain with the Hamblen County Sheriff's Department, testified that he was dispatched to the scene of the accident to offer assistance to Deputy Atkins. After being briefed by Deputy Atkins, Captain Moore suspected that the accident was alcohol related. Deputy Atkins testified that there was "an odor of alcohol about [ the appellant ]." Moreover, Captain Moore did not inquire specifically if the appellant was injured because Deputy Atkins informed him that the appellant had refused medical treatment. However, Captain Moore recalled that the appellant had an "obvious" injury to his face. Captain Moore also stated that the curve on which the appellant lost control of the tractor was a "bad curve" and had been the scene of a number of accidents in recent years.

Captain Moore also testified that he administered three field sobriety tests to the appellant: the finger-to-nose test, the walking heel-to-toe test, and the one leg stand test. Although the appellant followed his directions, Captain Moore noted that the appellant was "having trouble with his balance." During the finger-to-nose test, the appellant missed the tip of his nose. Moreover, during the heel-to-toe test, the appellant only completed approximately four steps. The appellant

explained that his poor performance was due to the worn soles on his boots. Finally, during the one leg stand, the appellant was unable to keep his foot elevated. Throughout the testing, the appellant did not appear confused or addled. Based on the appellant's performance, his personal observations, and the information regarding the accident, Captain Moore concluded that the appellant was impaired as a result of intoxication. He placed the appellant under arrest and ordered Deputy Atkins to transport the appellant to the Morristown police station.

Additionally, the State presented the testimony of Tim Wolfenbarger, an officer with the Morristown Police Department. Officer Wolfenbarger was ordered to administer an Intoximeter test to the appellant in order to measure the blood alcohol level in the appellant's body. Officer Wolfenbarger testified that he was certified to administer the test and that the machine had been certified by the Tennessee Bureau of Investigation on May 6, 1997. Further, Officer Wolfenbarger testified that he followed all of the operating procedures and that the Intoximeter was working properly. The appellant tried three separate times to blow into the Intoximeter; however, the Intoximeter results registered an insufficient sample.

The appellant offered the deposition testimony of Dr. Donald C. Thompson, the appellant's physician. Dr. Thompson testified that his associate treated the appellant at his office on June 11, 1997, three days after the accident. On that day, the appellant complained of headaches, blurred vision, light headedness, and "feeling scattered." Additionally, the appellant had a "black eye" and his pupils were unequal, indicating that he had experienced head trauma. Further, the attending physician noted that the appellant had a staggering gait. Based on these observations, the attending physician concluded that the appellant "probably had a concussion," and prescribed analgesics and muscle relaxants. Dr.

Thompson did not personally see the appellant until July 7, 1997, approximately one month after the accident.

Dr. Thompson further testified that the appellant's symptoms immediately following the accident would be more severe than the symptoms which were observed at the doctor's office. Moreover, Dr. Thompson stated that the symptoms of an intoxicated person would be similar to the symptoms of a person suffering from a head injury. Finally, Dr. Thompson opined that the appellant's head injury could have affected his ability to perform the Intoximeter test.

On cross-examination, Dr. Thompson stated that his testimony was primarily based on the notes of his associate, not his personal observations. Dr. Thompson stated that the appellant, as a result of his head injury, was "addled," "deluded," and "did not have a good contact with his reality" in his refusal of medical treatment. Moreover, Dr. Thompson opined that the appellant was probably still addled when he visited his office three days after the accident. On cross examination, Doctor Thompson admitted that he had plead guilty to driving under the influence approximately one week prior to his testimony.

## II. Analysis

### A. Sufficiency of the Evidence

The appellant contends that the record contains insufficient evidence to sustain his conviction for driving under the influence. Specifically, the appellant argues that although there is evidence in the record that indicates the appellant was impaired by alcohol, there is also ample evidence from which the jury could have

7

determined that the appellant simply had an accident on a "bad curve" and that his physical condition at the scene was a result of his head injury, not intoxication.

In Tennessee, appellate courts accord considerable weight to the verdict of a jury in a criminal trial. In essence, a jury conviction removes the presumption of the defendant's innocence and replaces it with one of guilt, so that the appellant carries the burden of demonstrating to this court why the evidence will not support the jury's findings. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). The appellant must establish that "no reasonable trier of fact" could have found the essential elements of the offenses beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Tenn R. App. P. 13(e).

Accordingly, on appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). In other words, questions concerning the credibility of witnesses and the weight and value to be given the evidence, as well as factual issues raised by the evidence, are resolved by the trier of fact, and not the appellate courts. State v. Pruett, 788 S.W.2d 559, 561 (Tenn. 1990). Furthermore, it is well established that the offense of driving under the influence of an intoxicant may be established by circumstantial evidence. State v. Gilbert, 751 S.W.2d 454, 459 (Tenn. Crim. App. 1988); State v. Woods, No. 03C01-9804-CC-00163, 1999 WL 427657, at *3-4 (Tenn. Crim. App. at Knoxville, June 28, 1999).

With respect to the appellant's conviction of driving under the influence, the applicable statute provides:

> (a) It is unlawful for any person to drive or be in physical control of an automobile or other motor driven vehicle on

8

> any of the public roads and highways of the state . . .
> while:
>> (1) Under the influence of any intoxicant, marijuana, narcotic drug, or drug producing stimulating effects on the central nervous system; . . . .

Tenn. Code Ann. § 55-10-401 (1998). In this case, the jury convicted the appellant of driving under the influence pursuant to an indictment charging that the appellant

> did unlawfully commit the offense of driving under the influence by driving a Peterbilt tractor upon the public roads and highways of the State of Tennessee while under the influence of an intoxicant, to-wit: alcohol, marijuana, narcotic drug or a drug producing stimulating effects on the central nervous system: a Class A misdemeanor in violation of Tenn. Code Ann. § 55-10-401. . . .

We conclude that the evidence, when viewed in a light most favorable to the State, was sufficient for a rational jury to reject the appellant's theory and find beyond a reasonable doubt that the appellant had committed the offense of driving under the influence of an intoxicant.[2] Talley, the only eye-witness to the accident, testified that the appellant was driving his truck on Old Kentucky Road when he lost control of the truck and crashed into Fox's yard. Talley, Fox, and Deputy Atkins all testified that the appellant fell or stumbled upon exiting his truck.

Deputy Atkins testified that he smelled alcohol when the appellant opened the door of his truck, and, furthermore, Deputy Atkins and Captain Moore both stated that the appellant "had an odor of alcohol." Deputy Atkins also testified that the appellant declined his offer of medical treatment. Moreover, Deputy Atkins

---

[2] See State v. Guilds, No. 01C01-9804-CC-00182, 1999 WL 333368, at *3-4 (Tenn. Crim. App. at Nashville, May 27, 1999); State v. Washington, No. 02C01-9710-CR-00408, 1998 WL 855458, at *1-2 (Tenn. Crim. App. at Jackson, December 10, 1998); State v. Blackman, No. 01C01-9708-CC-00335, 1998 WL 761811, at *4-5 (Tenn. Crim. App. at Nashville, October 30, 1998); State v. Pickett, No. 01C01-9710-CC-00472, 1998 WL 559408, at *2-3 (Tenn. Crim. App. at Nashville, August 31, 1998); State v. Schwartz, No. 01C01-9705-CC-00190, 1998 WL 120307, at *4-5 (Tenn. Crim. App. at Nashville, March 18, 1998); State v. Turner, No. 03C01-9604-CC-00151, 1997 WL 379158, at *2 (Tenn. Crim. App. at Knoxville, July 9, 1997).

testified that he discovered an empty beer can in the appellant's truck and that the appellant later admitted to drinking one beer prior to driving. Finally, both Deputy Atkins and Captain Moore testified that the appellant performed poorly on three field sobriety tests. Based on their observations, both officers concluded that the appellant was under the influence of an intoxicant.

In this case, the appellant essentially asks this court to reconsider the evidence and substitute a verdict of not guilty in exchange for the verdict found by the jury. That is not our function. We conclude that a rational jury could have found beyond a reasonable doubt that the appellant had committed the offense of driving under the influence of an intoxicant. This issue is without merit.

## B. Prosecutorial Misconduct

The appellant also contends that certain statements made by the prosecutor during closing argument constituted prosecutorial misconduct. Even though the appellant voiced an objection that the argument was improper and the trial court sustained the objection, the appellant did not request any curative measures. The appellant further argues that the prosecutor intended to unduly prejudice him by his continued remarks. The relevant portion of the prosecutor's closing argument is as follows:

> And what's scary, he's operating one of the biggest vehicles on the road. What if somebody had been coming the other way when that happened? They would be dead. They wouldn't have a chance.
>
> Mr. Talley: If the Court please, that's improper argument.
>
> The Court: Sustained.
>
> Mr. Dugger: Peterbilt tractors are big vehicles. The least little bit of drinking or anything on driving those things -- They're saying how -- the defense is saying how between the centerline and the roadway, how they have to keep that thing -- how it's so hard to keep it in there because

10

it's so big. Well, that should be even more reason that you shouldn't drink anything, driving one of those big vehicles because other people don't have a chance.

Our state courts have recognized that a closing argument is a valuable privilege for both the State and the defense, and, accordingly, have afforded wide latitude to counsel in presenting final argument to the jury. State v. Cribbs, 967 S.W.2d 773, 783 (Tenn. 1998); State v. Cauthern, 967 S.W.2d 726, 736 (Tenn. 1998). Although trial courts have discretionary authority to control the argument of counsel, "[c]losing arguments must be temperate, must be based upon the evidence introduced at trial, and must be relevant to the issues at trial." State v. Coker, 911 S.W.2d 357, 368 (Tenn. Crim. App. 1995). The standard of review in determining whether counsel was allowed too much latitude during closing argument is abuse of discretion. State v. Sutton, 562 S.W.2d 820, 823 (Tenn. 1978).

If prosecutorial conduct is deemed improper, the appellate court must determine "whether the impropriety affected the verdict." State v. Pulliam, 950 S.W.2d 360, 367 (Tenn. Crim. App. 1996). See also Harrington v. State, 385 S.W.2d 758, 759 (Tenn. 1965). Prejudice is assessed by analyzing the misconduct in light of the factors set forth in Judge v. State, 539 S.W.2d 340, 344 (Tenn. Crim. App. 1976):

> (1) the misconduct viewed in the context and the facts and the circumstances of the case;
>
> (2) any curative measures taken by the court or the prosecutor;
>
> (3) the intent of the prosecutor;
>
> (4) the cumulative effect of the misconduct in view of the consequences of any other errors in the trial; and
>
> (5) the "relative strength or weakness of the case."

Although the prosecutor's remarks were improper, they were relatively brief and there is no evidence that the prosecutor intended to unduly prejudice the appellant by his remarks. Moreover, while the court gave no curative instructions to the jury, the appellant did not ask the court to do so. There were only very minor errors in the trial and the state presented a strong case. Considering all these factors, we conclude that the prosecutors remarks, particularly in view of the strength of the state's case, were insignificant. This issue has no merit.

Accordingly, the judgment of the trial court is affirmed.

_____
Norma McGee Ogle, Judge

CONCUR:

_____
Jerry L. Smith, Judge

_____
Joe G. Riley, Judge