# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs December 15, 2009

## STATE OF TENNESSEE v. SUZANNE D. BURKHART

**Appeal from the Circuit Court for Sevier County**
**No. AP-08-005-II     Richard R. Vance, Judge**

---

**No. E2009-00092-CCA-R3-CD - Filed March 10, 2010**

---

The defendant, Suzanne D. Burkhart, appeals certified questions of law from the Sevier County Circuit Court, where she pleaded guilty to driving under the influence of an intoxicant (DUI) and violation of the implied consent law. The reserved certified question challenges on constitutional grounds a Sevierville police officer's basis for stopping her vehicle and also his authority for doing so outside the City of Sevierville. We affirm the action of the trial court.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and NORMA MCGEE OGLE, J., joined.

Richard L. Burnette, Sevierville, Tennessee (on appeal); and Bryan E. Delius, Sevierville, Tennessee (at trial), for the appellant, Suzanne D. Burkhart.

Robert E. Cooper, Jr., Attorney General & Reporter; Leslie E. Price, Assistant Attorney General; James B. Dunn, District Attorney General; and George Ioannides, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

In the hearing on the defendant's motion to suppress evidence gained through the stop of her vehicle on November 18, 2007, Sevierville police officer Kevin Stone testified that between 4:00 and 4:30 a.m. on November 18, he saw the defendant's vehicle traveling southbound on Highway 66 in Sevierville. He testified that "[s]he crossed over the line a little bit at that time." The officer activated his cruiser's video camera and followed the vehicle. He testified that the defendant turned onto North Parkway and again moved outside her lane of travel. Officer Stone characterized the defendant's "boundary violations"

as not "egregious," but they prompted him to continue observing her vehicle as a means of discerning whether the driver was in control of her vehicle. As the vehicles continued on North Parkway, the officer observed the defendant's vehicle leave her lane to short-cut a curve. The officer testified that she also drove at a speed of 55 miles per hour in a posted 35-mile-per-hour zone. The vehicles then traveled beyond the jurisdictional boundary of the City of Sevierville on U.S. Highway 411 toward Newport. The officer testified that the defendant's vehicle "did go over onto the right fog line" and that he then activated his lights six-tenths of a mile outside the city limits. He testified that the defendant's vehicle stopped at a point seven-tenths of a mile beyond the city limits.

On cross-examination, Officer Stone testified that he did not charge the defendant with a speeding violation. He admitted that he typically made more DUI arrests than the other eleven officers on night duty combined. He testified that he observed the defendant for approximately ten minutes and followed her for one to two miles before stopping her.

In ruling on the motion to suppress, the trial court found from viewing the videotape from Officer Stone's cruiser that the defendant's vehicle touched or crossed a painted line three times inside the City of Sevierville and once outside the city. The court observed that these instances of touching or crossing the lines for her lane of travel were not in and of themselves sufficient cause for the officer to stop her vehicle; however, the court determined that the lane irregularities combined with the defendant's exceeding the posted speed limit gave the officer reasonable suspicion to stop the defendant's vehicle and investigate. The trial court further held that because municipal police officers are statutorily empowered to operate officially within one mile beyond their municipality's boundary, Officer Stone was not physically beyond his jurisdiction when he stopped the defendant's vehicle. The trial court then overruled the motion to suppress.

Thereafter, the defendant moved the trial court to reconsider its ruling on the ground that, in his testimony in general sessions court, Officer Stone had said that the defendant's car did not exceed the posted speed limit. In hearing the motion to reconsider, the trial court noted that in general sessions court, the officer was asked whether he was "alleging that this individual ever exceeded the posted speed limit." The trial court observed that the "question put could easily have been understood that he wasn't charging [the defendant] with speeding" and that, in this sense, he was not "alleging" that she was speeding. The trial court found that the officer's testimony in the suppression hearing was credible, and it denied the motion to reconsider.

Following this ruling, the defendant proceeded to submit her guilty plea with the following certified questions reserved for appeal:

-2-

(1) Whether or not the officer had reasonable suspicion, based on specific and articulable facts, to justify the stop of Defendant (more particularly, at the time and location where the stop occurred at Layman's Grill and Market), as required by the Fourth Amendment of the U.S. Constitution and Article I, Section 7 of the Tennessee Constitution.

(2) Whether or not the officer had the authority to effect the stop of the Defendant at the point where the stop occurred, which is seven-tenths of a mile outside of the city limits of the City of Sevierville, Tennessee.

Discerning that the questions were properly framed and reserved pursuant to Tennessee Rule of Criminal Procedure 37(b), we examine the questions in turn.

*I. Reasonable Suspicion to Stop the Defendant's Vehicle*

When reviewing a trial court's findings of fact and conclusions of law on a motion to suppress evidence, we are guided by the standard of review set forth in *State v. Odom*, 928 S.W.2d 18 (Tenn. 1996). Under this standard, "a trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise." *Id.* at 23. However, when the trial court does not set forth its findings of fact upon the record of the proceedings, the appellate court must decide where the preponderance of the evidence lies. *Fields v. State*, 40 S.W.3d 450, 457 n.5 (Tenn. 2001). As in all cases on appeal, "[t]he prevailing party in the trial court is afforded the 'strongest legitimate view of the evidence and all reasonable and legitimate inferences that may be drawn from that evidence.'" *State v. Carter*, 16 S.W.3d 762, 765 (Tenn. 2000) (quoting *State v. Keith*, 978 S.W.2d 861, 864 (Tenn. 1998)). Furthermore, we review the trial court's conclusions of law under a de novo standard without according any presumption of correctness to those conclusions. *See, e.g., State v. Walton*, 41 S.W.3d 75, 81 (Tenn. 2001); *State v. Crutcher*, 989 S.W.2d 295, 299 (Tenn. 1999).

Because stopping an automobile without a warrant and detaining its occupants unquestionably constitutes a seizure, the State in the present situation carried the burden of demonstrating the applicability of an exception to the warrant requirement. *See, e.g., State v. Cox*, 171 S.W.3d 174, 179 (Tenn. 2005) (temporary detention of an individual during a traffic stop constitutes seizure that implicates the protection of both the state and federal constitutions); *State v. Keith*, 978 S.W.2d 861, 865 (Tenn. 1998).

The authority of a police officer to stop a citizen's vehicle is circumscribed by constitutional constraints. As is germane to the case at hand, state and federal constitutional limitations upon official search and seizure allow a police officer to conduct a brief investigatory stop when the detaining officer has a reasonable suspicion supported by specific and articulable facts that a criminal offense has been – or is about to be – committed. *Terry v. Ohio*, 392 U.S. 1, 20-23, 88 S. Ct. 1868, 1879-81 (1968). Whether reasonable suspicion existed in a particular case is a fact-intensive, but objective analysis. *State v. Garcia*, 123 S.W.3d 335, 344 (Tenn. 2003). The likelihood of criminal activity required for reasonable suspicion is not as great as that required for probable cause and is "considerably less" than would be needed to satisfy a preponderance of the evidence standard. *United States v. Sokolow*, 490 U.S. 1, 7, 109 S. Ct. 1581, 1585 (1989). Furthermore, a court must consider the totality of the circumstances in evaluating whether a police officer's reasonable suspicion is supported by specific and articulable facts. *State v. Hord*, 106 S.W.3d 68, 71 (Tenn. Crim. App. 2002). The totality of the circumstances embraces considerations of the public interest served by the seizure, the nature and scope of the intrusion, and the objective facts on which the law enforcement officer relied in light of his experience. *See State v. Pulley*, 863 S.W.2d 29, 34 (Tenn. 1993). The objective facts on which an officer relies may include his or her own observations, information obtained from other officers or agencies, offenders' patterns of operation, and information from informants. *State v. Michael James Grubb*, No. E2005-01555- CCA-R3-CD, slip op. at 6 (Tenn. Crim. App., Knoxville, Apr. 18, 2006).

In *State v. Binette*, 33 S.W.3d 215 (Tenn. 2000), our supreme court held that a police officer had an insufficient basis to form a "reasonable suspicion to stop Binette for driving while under the influence of an intoxicant." *Id.* at 220. The vehicle stop in *Binette* was based entirely upon the officer's observation of the vehicle's lateral movements within its lane of travel. The supreme court stated, "While Binette did move laterally at times within his lane while operating his vehicle, we find that his movement was not pronounced, and therefore did not give rise to reasonable suspicion that he was under the influence of an intoxicant." *Id.*; *see also State v. Garcia*, 123 S.W.3d 335, 345 (Tenn. 2003) ("[W]e hold that as a matter of law there was no reasonable suspicion to stop Garcia. While the defendant's driving may not have been perfect, we saw no evidence of weaving on the videotape, and we reiterate that 'it is the rare motorist indeed who can travel for several miles without occasionally varying speed unnecessarily, moving laterally from time to time in the motorist's own lane, nearing the center line or shoulder, or exhibiting some small imperfection in his or her driving.'" (quoting *Binette*, 33 S.W.3d at 219)); *cf. State v. Bernardino Lira*, No. W2005-00683-CCA-R3-CD, slip op. at 5 (Tenn. Crim. App., Jackson, Mar. 1, 2006) (distinguishing *Binette* in that Lira drove his vehicle "erratically and ma[de] wide turns").

-4-

In challenging the justification for stopping her vehicle, the defendant claims in her brief that Officer Stone was not qualified or otherwise was not sufficiently informed to testify about the defendant's speed. This evidentiary issue is beyond the scope of the certified questions, and we decline to consider it.

Based upon *Binette* and *Garcia*, we believe that the trial court in the present case correctly determined that the evidence of the lateral movements of the defendant's vehicle alone provided Officer Stone with no objective, reasonable suspicion to stop her vehicle. Looking at the totality of the circumstances, however, we further agree with the trial court that the evidence of these movements combined with the accredited testimony of Officer Stone that the defendant drove her vehicle in excess of the posted speed limit provided not only probable cause to cite the defendant for speeding but also reasonable suspicion to investigate whether the defendant was an impaired driver.

*II. Extra-Territorial Jurisdiction*

In his next issue, the defendant claims that Officer Stone possessed no authority to stop her vehicle after he left the city limits of Sevierville.

Of central importance to this issue is Tennessee Code Annotated section 6-54-301 which provides:

> The police authority of all incorporated towns and cities shall extend to a distance of one (1) mile from the lawful corporate limits thereof, for the suppression of all disorderly acts and practices forbidden by the general laws of the state; provided, that such jurisdiction of an incorporated town or city shall not be hereby extended beyond the limits of the county in which any part of such town is situated, or so as to come within one (1) mile of any other incorporated town or city.

T.C.A. § 6-54-301 (2005).

The defendant points to the provision in this Code section that empowers a municipal officer to operate in the one-mile buffer to suppress "disorderly acts and practices *forbidden by the general laws of the state*," s*ee id.* (emphasis added), and argues that Tennessee's general law regulating motor vehicle speed, Tennessee Code Annotated section 55-8-152, does not apply to municipal speed limits.

Tennessee Code Annotated section 55-8-152 contains the following speed limit provisions:

(a) Except as provided in subsection (c) [relative to certain controlled access highways], it is unlawful for any person to operate or drive a motor vehicle upon any highway or public road of this state in excess of sixty-five miles per hour (65 mph).

. . .

(d)(1)(A) Except as provided for certain counties in subdivision (d)(2), counties and municipalities are authorized to establish special speed limits upon any highway or public road of this state within their jurisdiction, except at school entrances and exits to and from controlled access highways on the system of state highways, which is adjacent to school grounds that are devoted primarily to normal school day activity. Such speed limit shall be enacted based on an engineering investigation, shall not be less than fifteen miles per hour (15 mph) and shall be in effect only when proper signs are posted with a warning flasher or flashers in operation and only while children are actually present.

T.C.A. § 55-8-152 (a), (d)(1)(A) (2004).

In examining the issue here presented, we take care to distinguish the case before us from a situation in which a police officer commences pursuit of a vehicle within the boundaries of his city and continues in fresh pursuit of the fleeing vehicle beyond the boundary or even beyond the one-mile limit. In *Francis v. State*, 498 S.W.2d 107 (Tenn. Crim. App. 1973), this court said,

The one-mile limit prescribed by . . . [T.C.A. § 6-54-301] was never intended to provide sanctuary and freedom from arrest for criminals who can outrun the policemen to that line. It is not the law that city policemen seeing law violations within the city must stop their pursuit at that line and permit the fleeing offender to escape before their eyes.

*Id.* at 114; *see also State v. Gilbert*, 751 S.W.2d 454 (Tenn. Crim. App. 1988) (determining that when officer was in pursuit of defendant's vehicle within his jurisdiction, he was

authorized to stop the defendant after his vehicle crossed into the next county). In the present case, no pursuit of the defendant's vehicle commenced within the Sevierville city limits, and we conclude that the fresh pursuit rule describe above is not applicable in this case.

Thus, we move to the question posed by the defendant – whether Officer Stone was authorized to initiate a stop of her vehicle in the one-mile zone for a violation of a general law forbidding speeding. We answer the question affirmatively. The default speed limit established by Code section 55-8-152 does not necessarily equate to a "general" law prohibiting speeding. Sub-section (d) delegates to municipalities in some cases the power to establish a lower speed limit within their jurisdictions, but even if a municipality does establish a speed limit, for instance, of 45 miles per hour within its jurisdiction, the Tennessee Department of Transportation may override the city's action and lower the speed limit further. *See id.* § 55-8-152(f)(1)(A) ("Notwithstanding any provision of this section to the contrary, the department is authorized to lower the speed limits prescribed in this section, and on the state system of roads and highways, as it deems appropriate due to concerns regarding the roadway, traffic, or other conditions. This authorization to reduce the speed limits set by this section shall be in addition to the authority conveyed by § 55-8-153."); *id.* § 55-8-153(a) ("The department of transportation is empowered to lower the speed limits prescribed in § 55-8-152 in business, urban or residential districts, or at any congested area, dangerous intersection or whenever and wherever the department shall determine, upon the basis of an engineering and traffic investigation, that the public safety requires a lower speed limit."). Furthermore, "Appropriate signs giving notice of the lower speed limit shall be erected *by the department* at such places or put on the highway where the prescribed speed limits are effective." *Id.* § 55-8-153(b) (emphasis added). Additionally, city speed limits on state highways lowered by the department of transportation apparently may again be lowered by action of the municipality. *See id.* § 55-8-153(c)(1)(A) ("The legislative authorities of municipalities shall possess the power to prescribe lower speed limits on highways designated as state highways in their respective jurisdictions when, on the basis of an engineering and traffic investigation, it is shown that the public safety requires a lower speed limit."). In view of this somewhat cooperative arrangement, we cannot say that the posted speed limit on U.S. Highway 411 as it passed through and beyond Sevierville was not a function of the general law of the state.

At any rate, evidence in the present case indicates that Officer Stone stopped the defendant's vehicle to investigate his reasonable suspicion that she was an impaired driver. We hold that Tennessee Code Annotated section 6-54-301 authorized him – from a territorial standpoint – to take this action. Clearly, DUI is generally proscribed in Tennessee, and Code section 6-54-301 vested him with the authority to enforce the DUI law within the one-mile zone.

*III. Conclusion*

We have concluded that Officer Stone had reasonable suspicion to stop the defendant and investigate a possible DUI, and accordingly, his detention of her did not fun afoul of the applicable constitutional provisions relative to searches and seizures. We have also concluded that Officer Stone was authorized to wield the authority of a police officer of the City of Sevierville when, entertaining a reasonable suspicion that a DUI was in progress, he stopped the defendant's vehicle beyond the corporate limits of Sevierville but within the one-mile zone established by Code section 6-54-301. As a result of these determinations, the evidence of the defendant's DUI was admissible and not subject to suppression. Consequently, the order of the trial court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE