# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs October 19, 2016

## STATE OF TENNESSEE v. DARRELL E. CHILDRESS

**Appeal from the Circuit Court for Maury County**
**No. 23685     Robert Jones, Judge**

_____

**No. M2016-00799-CCA-R3-CD – Filed December 28, 2016**

_____

A Maury County jury convicted the Defendant, Darrell E. Childress, of Driving Under the Influence ("DUI"), fourth offense, and the trial court sentenced him to 150 days of incarceration followed by two years of supervised probation. On appeal, the Defendant contends that: (1) the trial court erred when it allowed the State to impeach him with his prior conviction for public intoxication; (2) the trial court erred when it allowed the State to ask the arresting officer about the results of a field sobriety task; (3) the evidence is insufficient to sustain his conviction. After review, we affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and NORMA MCGEE OGLE, JJ., joined.

Robin E. Farber (at trial and on appeal) and Brandon E. White (on appeal), Columbia, Tennessee, for the appellant, Darrell E. Childress.

Herbert H. Slatery III, Attorney General and Reporter; Benjamin A. Ball, Senior Counsel; Brent A. Cooper, District Attorney General; and Adam Davis, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION
### I. Facts

This case arises from a traffic stop of a vehicle driven by the Defendant on August 5, 2014, at around 1:00 a.m. As a result of this stop, a Maury County grand jury indicted the Defendant for DUI, fourth offense. At his trial on this charge, the parties presented the following evidence: Sergeant Jeremy Haywood, an officer with the Columbia Police Department, testified that he was traveling northbound when he saw a gold or tan minivan traveling westbound on Wayne Street. The van failed to stop at a stop sign and

made a right-hand turn. The turn was "so wide" that the van came across both the northbound lanes of travel, into the oncoming travel lane, before "jerk[ing]" back over into the appropriate lane of travel. The vehicle then crossed from the inside lane into the outside lane and took a ramp that lead toward South Main Street. In court, Sergeant Haywood identified the Defendant as being the driver of the vehicle, and activated his emergency lights and stopped the vehicle.

Sergeant Haywood testified that he contacted another officer who had video recording approached the Defendant and asked him for his identification. He noticed the odor of alcohol and that the Defendant spoke with slurred speech. He asked the Defendant to step out of the vehicle. The Defendant told the officer that he was headed home and that he lived only a short distance away. The Defendant indicated that he had consumed some alcohol but did not say how much. Sergeant Haywood said that, when the Defendant exited the vehicle, he was unsteady on his feet, the odor of alcohol emanated from him, his speech was slurred, and his clothing was in disarray.

Sergeant Haywood testified that he gave the Defendant the Horizontal Gaze Nystagmus ("HGN") test, and defense counsel objected. The trial court instructed the jury that the officer could testify that he gave the test but could not testify about the results of the test. Sergeant Haywood stated that the Defendant failed to follow instructions during the HGN test by not properly following his finger with his eyes and moving his head. The officer said that he instructed the Defendant on the one-leg stand test and the nine-step test. The Defendant informed him that he had hip and back problems. The Defendant repeatedly told the officer that he was almost home, and then he refused to complete the tasks. The officer said that, based upon all the circumstances presented, he determined that the Defendant was impaired and arrested him for DUI.

Sergeant Haywood said that he explained the implied consent law to the Defendant and asked the Defendant to submit to a blood test. The Defendant declined. The officer said that he did not offer the Defendant a breathalyzer test. The officer identified a video taken by another officer of the stop and testing of the Defendant, and the State played the video for the jury.

In the video, Sergeant Haywood asked the Defendant to follow his finger with his eyes and not his head. The officer moved his finger to the right and the Defendant moved his head to the right. The officer again told the Defendant to follow his finger with his eyes and not his head and moved his finger to his left and right multiple times in front of the Defendant. The Defendant stumbled forward and asked the officer how many times he was going to go back and forth with his finger. Sergeant Haywood asked the Defendant to stand with one foot in front of the other on a white line. The Defendant seemed confused, said he could not do it, and then said he was doing it despite the fact

2

that his feet were not one in front of the other. The officer asked the Defendant to look at the officer's feet as an example, and the Defendant attempted to stand in a similar fashion and stumbled. The Defendant said, "I can't do it." The officer then offered to give the test involving raising one leg. The Defendant said his back was hurt, and the officer offered to skip the test. The Defendant said he would try anything the officer wanted, so the officer gave the Defendant instructions. He asked the Defendant to stand with his feet side by side and his arms down by his side. The Defendant stumbled when assuming this position. The officer asked the Defendant first to look up and close his eyes. The Defendant swayed repeatedly. The Defendant looked back at the officer, and the officer asked him if he knew the ABCs. The Defendant said yes, and the officer asked the Defendant to put his head up and close his eyes. The Defendant complied, but stumbled forwarded into the officer, and the Defendant said, "[W]e're done." The officer arrested the Defendant for DUI.

During cross-examination, Sergeant Haywood testified that, when he first noticed the Defendant's van, it was in part because the van crossed into the officer's lane of travel as he was driving. The officer said he had to slow down to avoid the van and then the van failed to stop at a stop sign. The officer agreed that there was no video of the Defendant's driving at that point because his cruiser was not equipped with video recording equipment. Sergeant Haywood agreed that the Defendant had a driver's license that he provided to the officer when asked. The officer agreed that, during the field sobriety testing, he became frustrated with the Defendant when the Defendant said he was unable to see a line to walk. The officer explained that the line seemed obvious to him. Sergeant Haywood said that the Columbia Police Department did not have a breathalyzer test. He agreed that there was one located at the jail, but he explained that he did not offer that test to the Defendant, in part because he was not certified on that device. He further explained that he preferred to use a blood test because it could reveal the use of both alcohol and/or other drugs while a breathalyzer test only revealed the presence of alcohol.

The Defendant testified that he had owned an auto body paint shop in Columbia for twenty-one years. At the time of his arrest, the Defendant had been living in his shop for three or four months, having moved in after separating from his wife. The Defendant stated that the chemicals used in the auto painting industry were damaging to his central nervous system. He said that he also worked at a Chevrolet dealership as the manager and head painter in the body shop. On the day leading to the night of his arrest, the Defendant worked from 8:00 a.m. to 5:00 p.m. After he left work, he drove his van to a store, got a six pack of beer and a pack of cigarettes, and then went to his auto body shop and began working to repaint an Impala. He said that he worked for a two to three hours, drank approximately three or four beers, and then went to bed on a small loveseat in his office between 7:30 and 8:00 p.m.

The Defendant said that he was living at the auto body shop temporarily and wanted to return home to his wife and kids. He hoped that by staying at the auto body shop his relationship with his wife would improve. Therefore, when he awoke later that evening at around 1:00 a.m. and saw a missed call on his phone that he believed to be from his wife. He believed that his wife would be at her mother's house, so he went there to try to talk to her. The Defendant agreed that he did not change his clothes before leaving and said that, when he was arrested, he was in the same clothing that he had slept in.

The Defendant said that he did not remember making a wide turn or failing to stop at a stop sign. He recalled feeling nervous when the officer stopped him but said that he followed the officer's instructions. The Defendant said that he suffered from physical problems including missing cartilage in his back, a collarbone injury from a motorcycle accident, and arthritis, and he offered medical records to the jury to confirm his injuries. The Defendant said that doctors had prescribed pain medications for his injuries, but he was unsure whether he took any on the evening of his arrest.

The Defendant further testified that, around the time of his arrest, he had been feeling dizzy and nauseated, sometimes falling. He had moments where he had to lie down because if he did not he would vomit. The Defendant said that he thought that he was suffering from acute vertigo. The Defendant said that, on the night of his arrest, when he saw the blue lights, he became very confused. The Defendant said that, when the officer asked him to walk the line, he did not understand the officer to mean to walk along a crack in the ground.

The Defendant said that the area where the officer stopped him had no lighting other than the flashing blue lights and headlights of the police cruisers. He said that there was a gradual uphill incline on the roadway. He said that he could not lean his head back during the nine-step walk and turn task because it made him nauseated. He stated that, even with his medical issues, he attempted to comply with the law and complete the tasks.

The Defendant explained why he refused a blood test. He said that he had an extremely bad experience at Maury Regional Hospital, and he did not want them "poking or cutting" him in any way. He said he would have taken a breathalyzer test had the officer offered it to him. The Defendant said that his ability to operate a motor vehicle on the night in question was not impaired by alcohol or any drugs.

During cross-examination, the Defendant testified that he was on his way to his wife's mother's house at the time of his arrest. He said he was unsure why he told the

officer that he was on his way home. The Defendant agreed that his medical records indicated that he had been prescribed Hydrocodone for his back pain. He said that he assumed that he took the medications as prescribed but said that he had not taken the Hydrocodone that evening because it was prescribed "as needed" for pain. The Defendant said that he was not "a big drinker at all."

The Defendant testified that the flashing blue lights of the police cruiser made him feel nauseated. He disagreed that the cruiser's illuminated headlights diminished the effects of the flashing blue lights upon him. The Defendant said that, while he sometimes frequented bars in the area, he went only to dance. He agreed that sometimes he would drink at these bars. The Defendant said that he had recently been to one of these establishments and had seen Sergeant Haywood there. Sergeant Haywood, he said, made a negative comment towards him about how he looked sober.

The court ordered a jury-out hearing. During this hearing the parties discussed whether the State had a right to cross-examine the Defendant about his ability to dance in light of his testimony that his bodily injuries caused him to be unable to complete the field sobriety tasks. The parties further discussed whether the Defendant had opened the door to questioning about his three prior DUI convictions by testifying that he was not a "big drinker at all." The trial court ruled that the Defendant had opened the door to the State's asking him about his prior convictions for public intoxication and DUI.

The jury returned, and upon further questioning, the Defendant agreed that he had pled guilty to a public intoxication charge within the last year. The Defendant said that he liked to dance in bars on occasion and that he had done so as recently as October 2014. The State asked why, on the date of his arrest, August 5, 2014, he was unable to perform the field sobriety tasks because of his injuries but he was able to dance. The Defendant said that he was "really confused" and then said that he and his wife slow danced when he went dancing.

Based upon this evidence, the jury convicted the Defendant of DUI. In the bifurcated hearing, the State then offered into evidence the Defendant's driving history of his DUI convictions only. The Defendant had been convicted of DUI on six previous occasions. The dates of the offenses were: July 1980; December 1987; February 1988; March 2006; April 2006; and May 2007.

## II. Analysis

On appeal, the Defendant contends that: (1) the trial court erred when it allowed the State to impeach him with his prior conviction for public intoxication; (2) the trial

5

court erred when it allowed the State to ask the arresting officer about the results of a field sobriety task; and (3) the evidence is insufficient to sustain his conviction.

## A. Impeachment

The Defendant alleges that the trial court abused its discretion when it allowed the State to impeach him using a prior public intoxication conviction. He states that he did not "open the door" to the use of the prior conviction pursuant to Tennessee Rules of Evidence 404 and 405. He asserts that he was unfairly prejudiced. He further contends that, because he did not open the door to the admission of this conviction, we must analyze whether it was properly admissible pursuant to Tennessee Rule of Evidence 609. His conviction, he asserts, did not meet the standard of admissibility under that rule. The State counters first that the Defendant has waived this issue on appeal by failing to object at trial. Additionally, the State argues that the Defendant opened the door to this line of questioning and that the trial court did not abuse its discretion by admitting the evidence.

Evidence must be relevant to be admissible. Tenn. R. Evid. 401. Evidence of a defendant's prior crimes, wrongs, or acts may be admissible where it is probative of material issues other than conduct conforming with a character trait. Tenn. R. Evid. 404(b). Thus, evidence of a criminal defendant's previous misconduct may become admissible when it logically tends to prove material issues such as: (1) the use of "motive and common scheme or plan" to establish identity, (2) to establish the defendant's intent in committing the offense on trial, and (3) to "rebut a claim of mistake or accident if asserted as a defense." *McCary*, 922 S.W.2d at 514. In order for such evidence to be admitted, the rule specifies:

> (b) Other Crimes, Wrongs, or Acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity with the character trait. It may, however, be admissible for other purposes. The conditions which must be satisfied before allowing such evidence are:
>
> (1) The court upon request must hold a hearing outside the jury's presence;
>
> (2) The court must determine that a material issue exists other than conduct conforming with a character trait and must upon request state on the record the material issue, the ruling, and the reasons for admitting the evidence;
>
> (3) The court must find proof of the other crime, wrong, or act to be clear and convincing; and

6

(4) The court must exclude the evidence if its probative value is outweighed by the danger of unfair prejudice.

Tenn. R. Evid. 404(b).

In reviewing a trial court's decision to admit or exclude 404(b) evidence, an appellate court may disturb the lower court's ruling only if there has been an abuse of discretion. *State v. DuBose*, 953 S.W.2d 649, 652 (Tenn. 1997); *State v. Baker*, 785 S.W.2d 132, 134 (Tenn. Crim. App. 1990). Where the trial court has been called to pass upon the admissibility of evidence of other crimes, wrongs, or acts under Rule 404(b), its determination is entitled to deference when it has substantially complied with the procedural requisites of Rule 404(b). *See DuBose*, 953 S.W.2d at 652.

At trial, the Defendant testified that he was not a "big drinker at all." In anticipation of the State's cross-examination regarding the Defendant's three prior DUI convictions, the trial court ordered a jury-out hearing. During the jury-out hearing, the parties discussed whether the Defendant had opened the door to cross-examination regarding his prior DUI convictions. The trial court asked the Defendant's attorney whether the Defendant had opened the door to his prior DUI convictions being introduced, and the Defendant's attorney responded "I am recognizing that [the Defendant] did open the door on some issues, but I'm also thinking that we have to balance the prejudicial effect . . . ." The State argued that the Defendant had said he did not drink when in fact he had several drinking-related convictions. Therefore, it asserted, his prior convictions were relevant to his credibility. After much discussion, the Defendant's attorney stated:

How about this, I have a suggestion. Then if the State asked [the Defendant] if he's ever been convicted of public intoxication and he says, yes, wouldn't that just go to his credibility, do it in a way that it's more fair to the State and we just move on?

After a brief recess, the trial court ruled that the State could question the Defendant about his prior DUI convictions. Ultimately, the State did not ask the Defendant about his prior DUI convictions and limited its questioning to the following:

| [State] Q. | Have you received any public intoxication conviction recently? |
| --- | --- |
| [Defendant] A. | Not recently. |
| [State] Q. | You have not received a public intoxication conviction this year? |
| [Defendant] A. | I don't know what you mean by "recently." |

7

| [State] Q. | Within this year. |
|---|---|
| THE COURT: | Well, are we talking about calendar year or 12 months from before today? Both of you need to be more specific. |
| [State's Attorney]: | 12 months from today going back in time. |
| THE COURT: | July 30th of last year, 12 months before, would have been six or seven days before August 5th of last year. |
| [DEFENDANT]: | Yes, sir. |
| [State]Q. | Have you received a public intoxication? |
| [Defendant] A. | Yes, sir. |
| [State] Q. | Did you plead guilty to that? |
| [Defendant] A. | Yes, sir. |

The State did not ask the Defendant any further questions about any of his prior convictions. The Defendant did not object to the State's questioning regarding his prior conviction for public intoxication.

The Defendant has waived this issue for failing to make a contemporaneous objection to the State's use of this conviction at trial. *See State v. Little*, 854 S.W.2d 643, 651 (Tenn. Crim. App. 1992) (failure to object to prosecutor's alleged misconduct during closing argument waives any later complaint). In fact, not only did he not object, but, after agreeing that the Defendant had opened the door to his prior convictions being used to impeach his credibility, the Defendant suggested that the State be limited in their cross-examination by only asking about the prior public intoxication to mitigate any prejudicial effect that the admission of his prior DUIs might have. The trial court ruled against the Defendant, but the State still complied with the Defendant's request. The Defendant cannot now properly complain that the trial court erred in its ruling.

Because the issue is waived, our review is limited to a review pursuant to the plain error doctrine. In order to obtain plain error review, the Defendant must show that:

> (a) the record clearly establishes what occurred in the trial court; (b) a clear and unequivocal rule of law was breached; (c) a substantial right of the accused was adversely affected; (d) the accused did not waive the issue for tactical reasons; and (e) consideration of the error is "necessary to do substantial justice."

*State v. Smith*, 24 S.W.3d 274, 282 (Tenn. 2000) (quoting *State v. Adkisson*, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994)). "[T]he presence of all five factors must be established by the record before this Court will recognize the existence of plain error, and complete consideration of all the factors is not necessary when it is clear from the record

that at least one of the factors cannot be established." *Id.* at 283. Plain error is not merely error that is conspicuous but instead is especially egregious error that strikes at the fairness, integrity, or public reputation of a judicial proceeding. *State v. Wooden*, 683, S.W.2d 553, 559 (Tenn. Crim. App. 1983). Because evidentiary issues are reviewed pursuant to an abuse of discretion, rarely "will plain error review extend to an evidentiary issue." *State v. Ricky E. Scoville*, No. M2006-01684-CCA-R3-CD, 2007 WL 2600540, at *2 (Tenn. Crim. App., at Nashville, Sept. 11, 2007), *no perm app. filed.*

In this case, the trial court held that the Defendant had opened the door to the admission of his prior conviction, public intoxication occurring within a year of his arrest, by testifying that he was not a "big drinker at all" and did not drink much around the time of his arrest. The Defendant's counsel agreed that he had opened the door but asked that the State still be prohibited from questioning the Defendant about his three prior DUI convictions and only be permitted to question him about his public intoxication conviction. The State complied with this request. We conclude that the trial court did not abuse its discretion when it allowed this line of questioning in light of the Defendant's testimony. Because the Defendant has failed to show all five plain error factors are satisfied, we need not consider the remaining factors. We further conclude that, because this conviction became admissible by the Defendant's testimony, it is not subject to the notice requirements of Tennessee Rule of Evidence 609. Defendant is not entitled to any relief on this issue.

**B. Officer's Testimony Regarding Field Sobriety Tasks**

The Defendant next contends that the trial court erred when it allowed Sergeant Haywood to testify about the results of the HGN test that he administered to the Defendant during the traffic stop because the officer was not qualified as an expert. The State counters that Sergeant Haywood did not testify about the results of the HGN test and only testified about how the Defendant failed to follow his instructions during the test, which is properly admitted testimony. After reviewing the officer's testimony thoroughly, we agree with the State.

With the exception of the HGN sobriety test, field sobriety tests are not scientific tests requiring the testimony of a qualified expert pursuant to Tennessee Rule of Evidence 702. *See State v. Murphy*, 953 S.W.2d 200, 202-03 (Tenn. 1997); *State v. Gilbert*, 751 S.W.2d 454, 459 (Tenn. Crim. App. 1988) (holding that "field sobriety tests are not 'scientific tests'; and the admissibility of the results is not to be governed by rules pertaining to the admission of scientific evidence."); *State v. Michael L. Hodges*, No. M2008-00776-CCA-R3-CD, 2009 WL 2971073, at *4 (Tenn. Crim. App., at Nashville, Sept. 17, 2009), *perm. app. denied* (Tenn. Mar. 22, 2010). In *Murphy*, the Tennessee Supreme Court addressed whether the HGN sobriety test constitutes "scientific, technical,

or other specialized knowledge" under evidentiary Rule 702. *Murphy*, 953 S.W.2d at 202. The *Murphy* Court concluded that the HGN test is scientific evidence requiring expert testimony. *Id.* The Court explained that "the HGN test does differ fundamentally from other field sobriety tests because the witness must necessarily explain the underlying scientific basis of the tests in order for the testimony to be meaningful to a jury." *Id.* at 202.

In this case, Sergeant Haywood did not testify about the result of the HGN test, which involves how the eyes react to light when a subject is intoxicated. Instead, the officer testified about the Defendant's failure to follow his instructions when he attempted to administer the test, saying that the Defendant moved his head during the test rather than only moving his eyes. In fact, the prosecutor asked specifically, "Without testifying as to the results of the test, did [the Defendant] follow your instructions?" and the officer limited his response to his observations of the Defendant's behavior, which can also be seen on the video of their interaction. The trial court instructed the jury that the officer could not testify about the results of the test, and the officer did not so testify. We conclude that the officer's testimony was properly admitted. The Defendant is not entitled to relief on this issue.

## C. Sufficiency of the Evidence

The Defendant next contends that the evidence is insufficient to sustain his conviction for DUI, fourth offense. He asserts that, although he acknowledged drinking three to four beers before he fell asleep, that was several hours before his arrest, and he provided medical documentation supporting his assertion that he was physically unable to perform the field sobriety tasks. Finally, he asserts that he did not submit to a blood alcohol test because he was fearful of the hospital, having had a bad experience there on a prior occasion. The State counters that the evidence is sufficient to sustain the Defendant's conviction. We agree with the State.

When an accused challenges the sufficiency of the evidence, this Court's standard of review is whether, after considering the evidence in the light most favorable to the State, "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see* Tenn. R. App. P. 13(e); *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (citing *State v. Reid*, 91 S.W.3d 247, 276 (Tenn. 2002)). This standard applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999) (citing *State v. Dykes*, 803 S.W.2d 250, 253 (Tenn. Crim. App. 1990)). In the absence of direct evidence, a criminal offense may be established exclusively by circumstantial evidence. *Duchac v. State*, 505 S.W.2d 237, 241 (Tenn. 1973). "The jury

decides the weight to be given to circumstantial evidence, and '[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury.'" *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006) (quoting *Marable v. State*, 313 S.W.2d 451, 457 (Tenn. 1958)). "The standard of review [for sufficiency of the evidence] 'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

In determining the sufficiency of the evidence, this Court should not re-weigh or reevaluate the evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. *State v. Buggs*, 995 S.W.2d 102, 105 (Tenn. 1999) (citing *Liakas v. State*, 286 S.W.2d 856, 859 (Tenn. 1956)). "Questions concerning the credibility of witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact." *State v. Bland,* 958 S.W.2d 651, 659 (Tenn. 1997). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978), *superseded by statute on other grounds as stated in State v. Barone*, 852 S.W.2d 216, 218 (Tenn.1993)) (quotations omitted). The Tennessee Supreme Court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1966) (citing *Carroll v. State*, 370 S.W.2d 523, 527 (Tenn. 1963)). This Court must afford the State of Tennessee the "'strongest legitimate view of the evidence'" contained in the record, as well as "'all reasonable and legitimate inferences'" that may be drawn from the evidence. *Goodwin*, 143 S.W.3d at 775 (quoting *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000) (citations omitted).

To prove DUI, the State must prove beyond a reasonable doubt that a defendant drove or was "in physical control of any automobile or other motor driven vehicle on any of the public roads and highways of the state, or on any streets or alleys . . . while . . . [u]nder the influence of any intoxicant[.]" T.C.A. § 55-10-401(a)(1) (2014).

The evidence, viewed in the light most favorable to the State, shows that the Defendant consumed three beers. An officer saw him driving his vehicle, improperly crossing oncoming traffic when turning and swerving. The officer stopped the Defendant and noted that there was an odor of alcohol emanating from him, that his clothing was disheveled, and that he had slurred speech. The Defendant did not follow instructions during the field sobriety tasks and did not complete them successfully. He was unsteady on his feet and stumbled forward on several occasions before telling the officer "we're done." The Defendant refused to take a blood alcohol test. We acknowledge that the Defendant offered some evidence about medical issues, but the jury, by its verdict, rejected the Defendant's claim, instead believing that, based upon the evidence and the video, the Defendant was in physical control of his automobile while under the influence of an intoxicant. The evidence supports the jury's verdict. Accordingly, we conclude that the State presented sufficient evidence to support the Defendant's conviction. Therefore, the Defendant is not entitled to relief on this issue.

### III. Conclusion

After a thorough review of the record and relevant authorities, we affirm the trial court's judgment.

_____
ROBERT W. WEDEMEYER, JUDGE